575 A.2d 545

**Emil GORYEB, Executor of the Estate of Greg Goryeb, Thomas Nice, III, and Marie Collins, Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Clarks Summit State Hospital and Yao C. Wang, M.D., Appellees.**

Supreme Court of Pennsylvania.

Argued April 5, 1990.

Decided May 17, 1990.

Joseph A. Quinn, Jr., Anthony C. Falvello, Joseph P. Giovannini, Jr., Wilkes Barre, for appellants.

Mark E. Garber, Chief Deputy Atty. Gen., for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

This is the appeal of Emil Goryeb, Executor of the Estate of Greg Goryeb, Thomas Nice, III, and Marie Collins, (appellants) from the opinion and order of the Commonwealth Court,[1] reversing the order of the Court of Common Pleas of Luzerne County, which denied the summary judgment motion filed by the Commonwealth of Pennsylvania, the

---

1. 125 Pa.Cmwlth. 271, 557 A.2d 822 (1989).

Department of Public Welfare, Clarks Summit State Hospital and Dr. Yao C. Wang (appellees). We reverse.

The undisputed facts are that at or about 4:30 P.M. on November 21, 1984, the eve of Thanksgiving, Jeffrey Geiger was brought to Clarks Summit State Hospital by Sergeant Victor D. Zuba of the Edwardsville Borough (Luzerne County) Police Department. Sgt. Zuba completed an Involuntary Emergency Examination and Treatment application pursuant to Section 302(a) of the Mental Health Procedures Act, 50 P.S. § 7101 *et seq.* In accordance with the prescribed procedure for involuntary admissions under the Act, Sgt. Zuba asserted, in the application, that Geiger was severely mentally disabled and posed a clear and present danger to himself and others. In describing the specific behavior to support his assertions, Sgt. Zuba advised that he had encountered Geiger carrying a hunting knife and threatening to use it on himself if he did not receive immediate help. The officer also noted that Geiger had told him that one week earlier Geiger held a loaded .357 Magnum to his head while contemplating suicide because he was so distraught over the termination of his relationship with his girlfriend of five (5) years, Marie Collins, one of the appellants herein.

An hour after his arrival at the hospital, Geiger was examined by a hospital physician and diagnosed to be "severely mentally disabled and in need of treatment," i.e. he met the statutory criteria for an involuntary emergency admission.[2] Under the statutory scheme, an involuntary admittee must be discharged within 120 hours of admission unless, within such period, he is admitted to voluntary treatment or a certification for extended involuntary emergency treatment is filed with the court of common pleas,

---

**2.** The Act provides that "A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." 50 P.S. § 7301(a).

stating the grounds on which extended emergency treatment is believed to be necessary.[3]

In the instant case, Geiger was discharged within the 120 hour period, on November 26, 1984, and no certification for extended emergency treatment was filed. One week later, on December 5, 1984, at or about 8:00 A.M., Geiger entered premises occupied by Marie Collins, her current boyfriend, Thomas V. Nice, III and another male, Greg Goryeb. Geiger proceeded to shoot all three residents of the household with a .357 Magnum, killing Goryeb and seriously wounding Collins and Nice. Geiger then turned the gun on himself, thereby concluding the worse case scenario of the hospital's decision to release him.

Appellants[4] brought suit against the hospital, the Commonwealth, the Department of Public Welfare and Dr. Yao C. Wang,[5] a hospital physician, alleging, *inter alia*, that the appellees were grossly negligent and committed willful misconduct in discharging Geiger when they knew or should have known that he was a continuing danger to himself and to others, especially Marie Collins and those associated with her. Appellants contend that Geiger received virtually no psychiatric treatment during his stay at the hospital, primarily due to holiday weekend staffing problems.

After extensive discovery, appellees filed a motion for summary judgment, raising the defense of sovereign immunity under 1 Pa.C.S. § 2310[6] and 42 Pa.C.S. § 8521[7] *et seq.* (the Sovereign Immunity Act), which motion was denied by the trial court. Upon request by appellees, the Common-

3. 50 P.S. §§ 7302(d) and 7303.

4. The Estate of Jeffrey Geiger is not involved in this case.

5. Appellants Nice and Goryeb did not file actions against Dr. Wang.

6. This statute, which reaffirmed sovereign immunity except as specifically waived by the General Assembly, was enacted in 1978 following our decision in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973).

7. 42 Pa.C.S. § 8521(a) provides:
 Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

wealth Court permitted an interlocutory appeal,[8] reversed and entered an order remanding the case to the trial court for entry of summary judgment in favor of appellees, 125 Pa.Cmwlth. 271, 557 A.2d 822 (1989). Appellants filed a Petition for Allowance of Appeal, which we granted to determine whether the acts or omissions of the appellees fall within any of the specific waivers of immunity enacted by the General Assembly.

Since this case reaches us as a grant of summary judgment, all doubts must be resolved in favor of the non-moving party. *See Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1980). Accordingly, for purposes hereof, we must assume that appellees were guilty of gross negligence or willful misconduct in discharging Geiger.

Appellees have asserted, and the Commonwealth Court agreed, that this Court's decisions in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987) and *Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987) are determinative of the issues presented in the instant case. We disagree.

In *Mascaro* and *Chevalier,* we were called upon to consider the extent of local agency immunity, and the exceptions thereto, under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564. In both cases, we determined that since the actions or omissions underlying the respective claims did not fall within the enumerated exceptions to immunity, the local agencies were immune from liability.

Appellees contend that since the Political Subdivision Tort Claims Act is the functional equivalent of the Sovereign Immunity Act, with the obvious exception that the former relates to local agencies while the latter relates to the Commonwealth and its related parties, our interpretations in *Mascaro* and *Chevalier* are equally applicable to the instant case. However, appellees overlook an overriding distinction between the aforesaid cases and the case *sub judice.* The local agency cases involved the Political Subdi-

8. Pursuant to 42 Pa.C.S. § 702 and Pa.R.A.P. 1311.

vision Tort Claims Act *alone,* while appellants' claims involve the interplay between the Sovereign Immunity Act and the Mental Health Procedures Act.[9]

One of the eight enumerated exceptions to immunity under the Sovereign Immunity Act relates to health care. It provides as follows:

(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

(2) Medical-professional liability.—Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.[10]

Similarly, one section of the Mental Health Procedures Act deals with immunity from civil and criminal liability. It provides as follows:

(a) *In the absence of willful misconduct or gross negligence,* a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, *shall not be civilly or criminally liable for such decision or for any of its consequences.*[11] (Emphasis supplied).

 In interpreting the meaning of the statutes of this Commonwealth, we are guided by the Statutory Construction Act of 1972, 1 Pa.C.S. § 1501 *et seq.* With specific

9. 50 P.S. § 7101 *et seq.*

10. 42 Pa.C.S. § 8522.

11. 50 P.S. § 7114.

reference to the potential interplay of two or more statutes addressing the same or related matters, 1 Pa.C.S. § 1932 is controlling. It reads as follows:

(a) Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes *in pari materia* shall be construed together, if possible, as one statute.

Applying the pertinent rules of statutory construction to the case *sub judice* leads to the inescapable conclusion that the relevant medical exception to the Sovereign Immunity Act must be read in conjunction with, and as limited by, the relevant immunity section of the Mental Health Procedures Act. This conclusion is reinforced by the provisions of Section 4(a) of Act 1978, Sept. 28, P.L. 788, No. 152, which was adopted in conjunction with 1 Pa.C.S. § 2310 and the former 42 Pa.C.S. § 5110, the predecessor of the current Sovereign Immunity Act. Section 4(a) lists certain statutes, including, *inter alia,* the Mental Health Procedures Act, which either affect or are affected by the Sovereign Immunity Act. The affected statutes "are repealed insofar as they waive or purport to waive sovereign immunity inconsistent with this act, but are saved from repeal insofar as they provide defenses or immunities from suit."[12] Since the Sovereign Immunity Act contains a medical-professional liability exception, it is not inconsistent with the immunity section of the Mental Health Procedures Act, i.e. 50 P.S. § 7114; therefore, the latter statute has not been repealed. Indeed, by applying the second portion of the above-quoted language, it is clear that the legislative intent is to provide the Commonwealth with the additional protections of 50 P.S. § 7114, i.e. no civil or criminal liability *except* in a case of willful misconduct or gross negligence.

Accordingly, by construing the two statutes *in pari materia,* as we are constrained to do, the following rule

12. Act 1978, Sept. 28, P.L. 788, No. 152, Section 4(a).

emerges. When a Commonwealth party [13] participates in a decision that a person be examined, treated or discharged pursuant to the Mental Health Procedures Act, such a party shall not be civilly or criminally liable for such decision or for any of its consequences except in the case of willful misconduct or gross negligence. Conversely, and most importantly to the instant case, a Commonwealth party participating in a decision to examine, treat or discharge a mentally ill patient within the purview of the Mental Health Procedures Act who commits willful misconduct or gross negligence can be liable for such decision.

█ Having established that liability may attach in the event of willful misconduct or gross negligence, we must now determine the proper extent of the potential liability. Or, in other words, to whom is the duty owed? For guidance we must look to the language of the statute. The converse reading of the statute is that a person committing willful misconduct or gross negligence shall be "liable for such decision or *for any of its consequences.*" [14] (Emphasis supplied). Clearly, the words "any of its consequences" indicate the legislative recognition that discharging a severely mentally disabled person, especially an involuntary admittee who has been classified, by statutory definition, as a clear and present danger to himself or others,[15] is a potential serious danger not only to the patient himself but to "others". In the instant case, the "others" who could foreseeably be affected by a wrongful discharge of Jeffrey Geiger, and consequently those to whom a duty is owed, would surely include Marie Collins and those closely associated with her (including the other appellants).[16] This determination of duty is consistent with Section 319 of the

13. 42 Pa.C.S. § 8501 defines "Commonwealth party" as a Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment.

14. 50 P.S. § 7114(a).

15. 50 P.S. § 7301.

16. We are not called upon here to determine, and we do not decide, the full ambit of those "others" to whom a duty is owed.

Restatement (Second) of Torts [17] and our own prior case law. "Under well established precedent, if plaintiff produces sufficient evidence to demonstrate the mental condition of [the patient] warranted the duty asserted, the hospital would clearly be responsible for injury to the person or property of third parties where such injury resulted from a hospital's negligent failure to meet its responsibility." *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 258, 465 A.2d 1231, 1240 (1983) (Mr. Chief Justice Nix concurring and dissenting opinion).

■ Appellees would have us hold that our decisions in *Mascaro v. Youth Study Center, supra,* and *Chevalier v. City of Philadelphia, supra,* require that the criminal act of Jeffrey Geiger be construed as a superseding cause exculpating the hospital from the consequences of its actions. To exculpate and/or immunize a party who, through gross negligence or willful misconduct, has unleashed into the community a person *non compos mentis,* who has been diagnosed to be a clear and present danger to himself or others, is neither consistent with the required *in pari materia* construction of the relevant statutes, nor public policy nor good sense, and we decline to do so.[18]

The order of the Commonwealth Court is reversed and the case remanded to the trial court for action consistent with this opinion.

ZAPPALA, J., notes his dissent in this case.

---

**17.** "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

**18.** Since we have determined this case on other grounds, we need not decide if acts of others are to be treated the same under the Sovereign Immunity Act as the Political Subdivision Tort Claims Act.