# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce A. Casteel and Joy R. Casteel, :
Individually and as Administrators of :
Carly A. Miller, Deceased :
:
:
v. :
:
Lonny Tinkey; George Lepley; :
John W. Benford and Shirley A :
Benford, husband and wife; :
Shirjon Inc., t/d/b/a Laurel :
Mountain Inn; the Commonwealth of :
Pennsylvania; the Pennsylvania :
Department of Health; and the :
Pennsylvania Advisory Counsel on :
Civil Drug and Alcohol Abuse :


Bruce A. Casteel and Joy R. Casteel, :
Individually and as Administrators of :
Carly A. Miller, Deceased :
:
:
v. :
:
Commonwealth of Pennsylvania :
Department of Corrections :

Appeal of: Bruce A. Casteel and :
Joy R. Casteel, Individually and as :
Administrators of Carly A. Miller, : No. 1881 C.D. 2014
Deceased : Submitted: November 16, 2015

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
              HONORABLE MARY HANNAH LEAVITT, Judge[2]
              HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION BY
PRESIDENT JUDGE PELLEGRINI[3]          FILED: December 5, 2016


        Bruce A. Casteel and Joy R. Casteel (Appellants), individually and as Administrators of the estate of Carly A. Miller, deceased (Decedent), appeal from the April 28, 2010 order[4] of the Court of Common Pleas of Somerset County (trial court) granting the motion for summary judgment filed by the Commonwealth of Pennsylvania, the Pennsylvania Department of Health (DOH), the Pennsylvania Advisory Council on Drug and Alcohol Abuse (Advisory Council), and the Pennsylvania Department of Corrections (DOC) (collectively, the Commonwealth) to the consolidated complaints filed by Appellants on July 14, 1995, and September 6, 1996.[5]

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[3] This case was assigned to the authoring judge on October 31, 2016.

[4] This order of the trial court was made final by order dated October 2, 2014. Therefore, the appeal was timely as it was filed on October 10, 2014.

[5] The July 14, 1995 complaint named all defendants other than the DOC, which was named as a defendant in the September 6, 1996 complaint. The trial court consolidated the complaints on January 13, 1997.

**I.**

The overarching issue in this case is whether Decedent's estate can bring an action against the Commonwealth under the medical profession exception to immunity[6] because the person responsible for Decedent's death for driving while intoxicated did not receive treatment for alcohol abuse as provided for in the Drug and Alcohol Abuse Control Act (Act), Act of April 14, 1972, P.L. 221, No. 63, *as amended*, 71 P.S. §§ 1690.101 – 1690.115 while in the County jail. A subsidiary issue is whether employees of the County and its contractors are state agents when implementing the plan at the local level provided for in the Act.

The Act provides that the DOH (Department of Drug and Alcohol Programs) shall have the power:

> (1) To develop and adopt a State plan for the control, prevention, intervention, treatment, rehabilitation, research, education and training aspects of drug and alcohol abuse

---

[6] The act commonly referred to as the Pennsylvania Sovereign Immunity Act (Sovereign Immunity Act), 42 Pa.C.S. §§ 8521-8528, waives sovereign immunity as a bar to actions against the Commonwealth for damages arising out of a negligent act where the damages would be recoverable under common law or statute and the negligent act falls within one of the nine enumerated exceptions set forth at § 8522(b). *See* 42 Pa.C.S. § 8522(a). Pursuant to Section 8522(b) of the Sovereign Immunity Act, liability may be imposed on a Commonwealth party for claims of damages caused by:

> (2) Medical-professional liability. – Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

42 Pa.C.S. § 8522(b)(2).

and dependence problems. The State plan shall include, but not be limited to, provisions for:

> (xv) **Treatment and rehabilitation services for male and female juveniles and adults who are charged with, convicted of or serving a criminal sentence for any criminal offense under the laws of this Commonwealth. . . . These services shall include, but are not limited to, emergency medical services, inpatient services and intermediate care, rehabilitative and outpatient services.**

Section 2301-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, added by the Act of July 9, 2010, P.L. 348, *as amended*, 71 P.S. § 613.1(1)(xv).[7] (Emphasis added.)

Counties that wish to receive state and federal funding for treatment and prevention efforts are required by the State Plan to designate single county authorities (SCAs) to be responsible for program planning and the administration of federal and state-funded grants and contracts. (R.R. at 160-69.) Counties are granted flexibility in how they choose to administer programs by allowing for the establishment of a public entity within its local government structure, a private non-profit body, or an entity under the auspices of the county mental health/mental retardation programs. *Id*. at 161. Most services are provided by independent facilities under contract with the SCAs. *Id*. Here, Somerset County created Somerset SCA, which, in turn, contracted with Twin Lakes Center for Drug and Alcohol Rehabilitation (Twin Lakes), a private entity, to provide drug and alcohol treatment services.

---

[7] The Advisory Council was established by Section 3 of the Act, 71 P.S. § 1690.103, and requires the DOH to seek written advice from the Advisory Council in the development and implementation of the State Plan and related matters.

The applicable State Plan "contains requirements that become legally binding through incorporation into contracts between the DOH's Office of Drug and Alcohol Programs (ODAP) and the Single County Authorities (SCAs)." *Id*. at 159. Additionally, as part of its "Statement of Policy" for "Single County Authority," the State Plan provides:

> This Chapter is intended to establish a statewide system of agencies which shall have the responsibility for assisting the Department in planning for community-based services. It is the position of the Department that no central authority can determine precisely what services are necessary in each of the 67 counties of this Commonwealth. Consequently, the emphasis in this State Plan is on the establishment of community-based drug and alcohol prevention, intervention and treatment services. The State Plan allows for the formation of SCAs to provide services and receive funding, and provides the exclusive options for their organizational structures.

*Id*. at 162. Further, Somerset SCAs' Plan includes an "Organizational Chart" showing the Commonwealth in the highest position, superior to the Somerset County Commissioners and the Somerset SCA Director thereunder. *Id*. at 173.

There is also a separate provision for individuals who are incarcerated. Section 6 of the Act, entitled "Drug or alcohol abuse services in correctional institutions, juvenile detention facilities and on probation and parole," provides:

> (a) The services established by this act shall be used by the **Department of Corrections and the Department of Public Welfare** for drug and alcohol abusers or drug and alcohol dependent offenders, including juveniles, placed on work release, probation, parole, or other conditional release.

4

The department shall coordinate the development of and encourage State and appropriate local agencies and departments including the Department of Corrections and Board of Probation and Parole, pursuant to the State plan, to establish community based drug and alcohol abuse treatment services and of drug and alcohol abuse treatment services in State and county correctional institutions.

**Medical detoxification and treatment shall be provided for persons physically dependent upon alcohol or controlled substances at *correctional institutions and juvenile detention facilities* or in available appropriate medical facilities.**

71 P.S. § 1690.106(a). (Emphasis added.)

## II.

### A.

The facts underlying Appellants' complaint are not in dispute and may be summarized as follows. Having caused a very serious motor vehicle accident in Somerset County in 1993, Lonny Tinkey (Tinkey) was charged with a number of misdemeanors and summary offenses. He was sentenced by the trial court in February 1994 to a sentence in the Somerset County Jail of three to 23 months.[8] Upon recommendation of the Somerset County District Attorney and the Somerset County Adult Probation Department, the sentencing court issued a work-release order under which Tinkey would be allowed to maintain his employment at Hidden Valley Ski Resort, subject to certain conditions. Among other things, defendant Tinkey

---

[8] The Somerset County Jail is a county correctional facility operated by Somerset County, as distinguished from a State Correctional Institution, operated by the Pennsylvania Department of Corrections.

agreed to "refrain from all use of alcohol and drugs" while on work-release. (R.R. at 151.) The trial judge specified that "[t]he defendant will obtain a drug and alcohol evaluation and successfully complete any recommendations for counseling and treatment, at the defendant's expense." (R.R. at 101.)

On March 23, 1994, while on work-release, Tinkey consumed beer that he allegedly purchased from defendant Shirjon, Inc., trading and doing business as Laurel Mountain Inn (Laurel Mountain Inn), borrowed the truck of defendant George Lepley, and, while driving under the influence, struck and killed Carly Miller and her friend, Stacy Overton, as they walked along State Route 601. On December 7, 1994, Tinkey was sentenced to 14 years' imprisonment in a state correctional facility following his conviction of homicide by vehicle while driving under the influence. (Trial court op. at 2.)

**B.**

Appellants filed complaints asserting wrongful death and survival actions against the above-named private defendants[9] as well as the Commonwealth. As against the Commonwealth, in Count IV of the Complaint, they allege that the Act requires that medical treatment be provided to persons dependent upon alcohol or controlled substances at correctional institutions and other facilities.[10] 71 P.S. §

---

[9] The claims against the private defendants set forth in Counts I, II and III of the Complaint are no longer at issue.

[10] Section 6 of the Act, entitled "Drug or alcohol abuse services in correctional institutions, juvenile detention facilities and on probation and parole," provides, in relevant part:

**(Footnote continued on next page…)**

1690.106(a). Specifically, they contend the Act mandates that the DOH develop a state plan for such treatment, which shall include emergency medical services, inpatient services, intermediate care, rehabilitation and outpatient services. 71 P.S. § 613.1(1)(xv). They contend through the establishment of the Advisory Council that the Commonwealth retained final authority for implementation of and compliance with the Act. 71 P.S. § 1690.103.

Because Tinkey was never evaluated, treated or provided with rehabilitation services for his alcohol dependency and alcohol-related offenses when he was in the Somerset County jail, Appellants contend that was a "treatment decision" of the Commonwealth, its agencies, its health care employees and its related health care personnel. According to Appellants, the Commonwealth defendants' failure to comply with the Act constitutes negligence *per se* and makes the Commonwealth liable to them for injuries they sustained. The Commonwealth then filed an answer and new matter[11] asserting that they had no duty to Appellants and raising sovereign immunity as an affirmative defense.

---

**(continued…)**

> Medical detoxification and treatment shall be provided for persons physically dependent upon alcohol or controlled substances at correctional institutions and juvenile detention facilities or in available appropriate medical facilities.

71 P.S. § 1690.106(a).

[11] The Commonwealth initially filed preliminary objections to the complaint that contended, among other things, sovereign immunity. Appellants objected, claiming, in part, that the Commonwealth defendants improperly raised the defense of sovereign immunity in preliminary objections rather than in new matter. The trial court agreed and dismissed the preliminary objections without opinion. The Commonwealth defendants then filed an answer and new matter **(Footnote continued on next page…)**

7

## C.

After conducting discovery, the Commonwealth filed a motion for summary judgment contending that the Appellants could not demonstrate that any of the Commonwealth defendants owed them, or Decedent, any duty. It also contended that Appellants failed to demonstrate that they fell within the medical-professional exception to immunity because they failed to establish that: (1) they had a cause of action for which there was recovery under common law or statute; and (2) the negligent act was one for which immunity has been specifically waived. As to the first prong, the Commonwealth contended that there existed no common law cause of action for failure to provide treatment and no statutory cause of action because the Act does not create a private cause of action if any provision of the Act was not followed. It also alleged that the DOH and Advisory Council have no duty under the Act to make individual treatment decisions with regard to alcohol dependency.

---

**(continued…)**

raising sovereign immunity as an affirmative defense. In this appeal, Appellants argue that because another trial judge "rejected" the Commonwealth defendants' sovereign immunity argument when it dismissed the Commonwealth defendants' preliminary objections, the trial court's subsequent consideration of that issue in granting summary judgment is barred by the law of the case doctrine. "The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court…." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). In *Goldey v. Trustees of the University of Pennsylvania,* 675 A.2d 264 (Pa. 1996), our Supreme Court explained that "[w]here the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Id*. at 267. Because the motions fall squarely within the court's holding in *Goldey,* the doctrine of law of case does not apply.

The Commonwealth further argued that even if there was a common law action or a statutory cause of action, the alleged negligent acts did not fall within the medical-professional exception to sovereign immunity because Appellants have not alleged negligence of any health care employee of the named Commonwealth agencies or any health care personnel. Instead, the time that they allege that Tinkey was entitled to alcohol treatment was when he was in the custody of the County, not the Commonwealth facility. In any event, the Commonwealth contended that claims against the facilities for institutional or administrative negligence are not encompassed within this exception to sovereign immunity.

In response to the summary judgment motion, Appellants argued that the Commonwealth defendants have a mandatory duty under the Act to provide drug and alcohol treatment services to all inmates across the Commonwealth. Appellants contended that the Act, through its State Plan, created a statewide system of SCAs and/or private entities, and that every SCA or private entity was required to implement the State Plan via direct contracts with the DOH. According to Appellants, if a county did not create an SCA or contract with another entity to provide services, the DOH obtained services for that area directly by contracting with an entity to provide the same. Appellants maintained that the Commonwealth turned to the Somerset County Single County Authority (Somerset SCA), which contracted with Twin Lakes to carry out the mandatory requirements of the DOH's State Plan[12] and the express statutory language of the Act. Accordingly, Appellants argued that

---

[12] The Pennsylvania State Plan for the Control, Prevention, Intervention, Treatment, Rehabilitation, Research, Education and Training Aspects of Drug and Alcohol Abuse and Dependence Problems - State Fiscal Year 1993/94. (R.R. at 158-69.)

9

the Somerset SCA and Twin Lakes were agents of the Commonwealth, subjecting them to both the protections and immunities waived under the Sovereign Immunity Act.

## D.

Following oral argument, the trial court issued a memorandum and order dated April 28, 2010, granting the Commonwealth defendants' summary judgment motion.[13] The trial court rejected Appellants' assertion that the medical-professional exception to sovereign immunity, relating to damages caused by "acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel," 42 Pa.C.S. § 8522(b)(2), applied in this case.

Initially, the trial court observed that Appellants had not sued a Commonwealth party who is a doctor, dentist, nurse or related health care person. Thus, the only portion of the medical-professional liability exception potentially applicable was whether the alleged damages were caused by "acts of health care employees of Commonwealth agency medical facilities or institutions." (Trial court op. at 6.) The trial court also assumed, for purposes of its analysis, that Twin Lakes

---

[13] "Summary judgment is appropriate only where the record clearly demonstrates that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. The issue as to whether there are genuine issues as to any material fact presents a question of law; thus, on that question, our standard of review is *de novo* and our scope of review is plenary." *Shedden v. Anadarko E. & P. Co., L.P.*, 136 A.3d 485, 489 (Pa. 2016) (internal citations omitted).

employed "health care employees" as contemplated by the medical-professional liability exception. However, the trial court indicated that employees of Twin Lakes were the only relevant health care employees involved in this case, and stated that they were not employed by the Commonwealth.

The trial court determined that Twin Lakes was not a Commonwealth agency, and that it was under contract with Somerset SCA, "an agency of Somerset County, a local agency." *Id*. at 8. The trial court stated that there was no way to impute such an entity's acts or omissions to the Commonwealth, nor was there an exception that would subject the Commonwealth defendants to liability even if liability could be imputed. Thus, the trial court held that the Commonwealth defendants were entitled to sovereign immunity. After all claims against all parties had been disposed of, Appellants filed a timely appeal with this Court challenging the entry of summary judgment in favor of the Commonwealth defendants.

**III.**

On appeal, Appellants argue, *inter alia*, that the trial court erred by ignoring disputed issues of material fact as to whether Somerset SCA acted as a surrogate or agent of the Commonwealth.[14] Appellants argue that, under the Act, the Commonwealth had a mandatory duty to provide drug and alcohol treatment and services to Tinkey, that Somerset SCA and Twin Lakes were acting as agents of the

---

[14] Appellants also argue that the trial court should be reversed on public policy grounds. However, it is well settled that, in light of the legislature's clear intent to insulate government from exposure to tort liability, the exceptions to sovereign immunity must be strictly construed and narrowly interpreted. *See, e.g., Stein v. Pennsylvania Turnpike Commission*, 989 A.2d 80, 84-85 (Pa. Cmwlth. 2010); *Crockett v. Edinboro University*, 811 A.2d 1094, 1096 (Pa. Cmwlth. 2002).

11

Commonwealth with respect to the same, and that the failure to provide evaluation and treatment services to Tinkey constitutes negligence *per se*.

## A.

Before addressing the issue of whether Somerset SCA and Twin Lakes were acting as agents of the Commonwealth and that conduct falls within the medical-professional exception to liability, it is necessary to address the Commonwealth's argument that Appellants have failed to make out a common law cause of action against the Commonwealth or that immunity has been waived for acts of third parties.[15]

In order to maintain an action against a commonwealth party, a plaintiff must establish that he or she has a statutory cause of action or that it was one maintainable at common law. *Peak v. Petrovich*, 636 A.2d 1248 (Pa. Cmwlth. 1994). An action is deemed to be maintainable at common law if it existed at English common law or in statutes in force in Pennsylvania on May 17, 1776. *See* 1 Pa. C.S. § 1503. The most frequent common law cause of action brought against a governmental party is negligence. To establish common law negligence, the following elements must be generally met:

---

[15] Even though the cause of action did not exist at common law, an action can still be brought against the governmental entity if there is a cause of action created by statute that allows the plaintiff to maintain the action, *e.g.*, wrongful death. In any event, unless specifically waived within the enabling legislation, the negligent conduct has to fall within one of the exceptions to immunity. Appellants do not contend that there is a cause of action created by the Act, only that its purported failure to provide treatment authorized by the Act was negligence *per se*.

12

1. A duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

2. A failure on his part to conform to the standard required;

3. A reasonably close causal connection between the conduct and the resulting injury;

4. Actual loss or damage resulting to the interests of another.

*Farber v. Engle*, 525 A.2d 864, 867 (Pa. Cmwlth. 1987). The Commonwealth contends that Appellants failed to show that it had a duty to the Appellants or that its conduct caused the accident.

Assuming (1) that under the Act, Tinkey has to be provided with treatment; (2) that the trial judge's order granting him work-release with the caveat that he receive alcohol treatment did not satisfy or at least relieve the County's obligation to provide treatment while in the County jail; and (3) that a commonwealth party was negligent, negligence has not been made out because the Commonwealth has breached no duty to Appellants. The Act provides that individuals who are incarcerated with drug or alcohol problems are to receive treatment. If Tinkey did not receive treatment while incarcerated, he could possibly bring an action for the prison authorities to provide him with such treatment. However, the failure to receive treatment or inadequate treatment does not make the Commonwealth liable to third parties even if negligence can be shown.

Any purported negligence in not providing Tinkey treatment is not maintainable because it falls within the public duty doctrine. This doctrine provides

13

that a plaintiff, when alleging some negligent performance of a governmental activity, has the burden to show that the government owed a duty to the plaintiff and not solely for the benefit of the general public when performing the activity in question. If the activity is designed solely for the benefit of the general public, even though it is foreseeable that the negligence of the governmental entity will then cause harm to the plaintiff, the action fails for lack of legal duty owed to the plaintiff. *Thomas v. City of Philadelphia*, 574 A.2d 1205 (Pa. Cmwlth. 1990). This doctrine covers both when the commonwealth party negligently fails to undertake some sort of action, and when it undertakes an action but does so negligently. Negligently undertaken activities that have been held to be a public duty and, therefore, not actionable include:

> • extinguishing fires and saving property. *Fire Ins. Patrol v. Boyd*, 15 A. 553 (Pa. 1888); *Zern v. Muldoon*, 516 A.2d 79 (Pa. Cmwlth. 1986).
>
> • providing police protection to any particular person. *Agresta v. City of Philadelphia*, 631 A.2d 772 (Pa. Cmwlth. 1993), *overruled in part by City of Philadelphia Police Department v. Gray,* 633 A.2d 1090 (Pa. 1993); *Morris v. Musser*, 478 A.2d 937 (Pa. Cmwlth. 1984); *Melendez by Melendez v. City of Philadelphia*, 66 A.2d 1060 (Pa. Super. 1983); *Chapman v. City of Philadelphia*, 434 A.2d 753 (Pa. Super. 1981).
>
> • negligently investigating of criminal activity by police. *Murphy v. City of Duquesne*, 898 A.2d 676 (Pa. Cmwlth. 2006).

Because the duties under the Act are "public duties," any purported negligence in not providing treatment is not actionable even if it falls within this medical-professional exception to immunity.

**B.**

Even assuming that it had a cognizable duty to Decedent and was negligent in not providing Tinkey with alcohol treatment and that conduct fell within the medical-professional exception, the Commonwealth still would be immune because it can only be liable for injuries caused by its employees and not of third parties.

In *Moore v. Commonwealth, Department of Justice,* 538 A.2d 111 (Pa. Cmwlth. 1988), we addressed an allegation that injuries occurred to a person due to the negligence of commonwealth medical-professionals in releasing a prisoner. In that case, Moore had been a witness to an armed robbery and was prepared to testify against the actor when the actor pled guilty and was sentenced to a state correctional facility. After the actor had served ten months of his sentence, he was approved by prison officials for a two-day home furlough. The actor failed to return to prison and one month later shot Moore, causing Moore to suffer paraplegia and loss of hearing. Moore filed complaints against the Commonwealth and the individual defendants alleging that defendants were negligent in approving the furlough and in failing to properly diagnose, treat or recognize the actor's psychiatric condition, and that conduct fell within the medical-professional exception.

Rejecting Moore's contention that the allegations against the Commonwealth fell within the waiver of immunity for medical-professional liability, we stated "[t]he Pennsylvania Supreme Court has recently declared that the General Assembly has not waived the immunity of the 'Commonwealth or its local agencies' for harm caused by third persons 'in any of the eight [immunity] exceptions.'" *Id.* at

15

113 (quoting *Chevalier v. City of Philadelphia*, 532 A.2d 411, 413 (Pa. 1987)). *See also Johnson v. Southeastern Pennsylvania Transportation Authority,* 532 A.2d 409 (Pa. 1987).

In this case, even if the failure to provide alcohol treatment fell within the medical-professional exception and there was a duty to Decedent, the Commonwealth has not waived immunity for the acts of third parties – in this case, Tinkey's driving while intoxicated.

## IV.

### A.

Not only was there no duty to Decedent, and immunity for injuries caused by third parties has not been waived even when the negligence falls within one of the exceptions to immunity, Appellants' allegation that the Commonwealth was negligent because it failed to provide Tinkey with alcohol treatment as provided for in the Act cannot be maintained because that conduct does not fall within the medical-professional exception to immunity.

Relying on *Goryeb v. Department of Public Welfare*, 575 A.2d 545 (Pa. 1990), Appellants, however, contend that the Act makes failure to provide alcohol treatment negligence *per se* and immunity was waived because it must be read *in pari materia* with the medical-professional exception to sovereign immunity. In *Goryeb*, the appellants filed suit against a state hospital, the Commonwealth, the Department of Public Welfare, and a hospital physician, alleging that they were grossly negligent

16

and committed willful misconduct when they discharged a psychiatric patient who they knew or should have known presented a danger to himself and others.

The applicable statutory scheme, set forth in Section 114 of the Mental Health Procedures Act,[16] provided:

> (a) *In the absence of willful misconduct or gross negligence*, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, *shall not be civilly or criminally liable for such decision or for any of its consequences*.

50 P.S. § 7114 (emphasis added). Referencing the rules of statutory construction, the court, in *Goryeb*, interpreted the medical exception to sovereign immunity together with the Mental Health Procedures Act, and reasoned as follows:

> Applying the pertinent rules of statutory construction to the case *sub judice* leads to the inescapable conclusion that the relevant medical exception to the Sovereign Immunity Act must be read in conjunction with, *and as limited by*, the relevant immunity section of the Mental Health Procedures Act. This conclusion is reinforced by the provisions of Section 4(a) of Act 1978, Sept. 28, P.L. 788, No. 152, which was adopted in conjunction with 1 Pa.C.S. § 2310

---

[16] Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. § 7114.

and the former 42 Pa.C.S. § 5110, the predecessor of the current Sovereign Immunity Act. Section 4(a) lists certain statutes, including, *inter alia*, the Mental Health Procedures Act, which either affect or are affected by the Sovereign Immunity Act. The affected statutes "are repealed insofar as they waive or purport to waive sovereign immunity inconsistent with this act, but are saved from repeal insofar as they provide defenses or immunities from suit." Since the Sovereign Immunity Act contains a medical-professional liability exception, it is not inconsistent with the immunity section of the Mental Health Procedures Act, i.e. 50 P.S. § 7114; therefore, the latter statute has not been repealed. Indeed, by applying the second portion of the above-quoted language, it is clear that the legislative intent is to provide the Commonwealth with the additional protections of 50 P.S. § 7114, i.e. no civil or criminal liability *except* in a case of willful misconduct or gross negligence.

Accordingly, by construing the two statutes *in pari materia*, as we are constrained to do, the following rule emerges. When *a Commonwealth party* participates in a decision that a person be examined, treated or discharged pursuant to the Mental Health Procedures Act, *such a party shall not be civilly or criminally liable for such decision or for any of its consequences except in the case of willful misconduct or gross negligence. Conversely, and most importantly to the instant case, a Commonwealth party participating in a decision to examine, treat or discharge a mentally ill patient within the purview of the Mental Health Procedures Act who commits willful misconduct or gross negligence can be liable for such decision.*

575 A.2d at 548-49 (emphasis added) (footnotes omitted). The court noted that a "Commonwealth party" is defined as "a Commonwealth agency and any employee thereof, but only with respect to an act within the scope of the employee's office or employment." 42 Pa.C.S. § 8501.

18

Appellants argue that, like the statute at issue in *Goryeb*, the Act does not conflict with the Sovereign Immunity Act and does not *preclude* a suit for negligence. However, Appellants overlook the significant fact that, unlike the Medical Health Procedures Act, the Act does not *authorize* suit nor does it contain any language extending the limited waiver of sovereign immunity provided by the medical-professional exception at § 8522(b)(2). Mindful that the exceptions to sovereign immunity must be strictly construed and narrowly interpreted, *Stein*, and absent any language in the Act that expands the waiver of sovereign immunity, we necessarily conclude that the Appellants' argument in this regard also fails.

**B.**

Central to Appellants' arguments is that the SCA and its contractors are agents of the commonwealth in carrying out any responsibilities under the Act. That is important because the medical-professional liability exception waives immunity for a commonwealth party for "acts of health care employees of the commonwealth agency, medical facility or institutions or by a commonwealth party[17] who is a doctor,

---

[17] 42 Pa.C.S. § 8522 provides that the protection of sovereign immunity is available to all commonwealth parties. A commonwealth party is defined as "a commonwealth agency and employee, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. After that, to determine what is a commonwealth party requires going from defined term to term. Under 42 Pa.C.S. § 102, a commonwealth agency is defined as "[a]n executive agency or independent agency." Agencies are classified as "executive" if they are under the supervision and control of the Governor and, if they are not, as "independent." *Id.* Both of these types of agencies are expressly defined as including entities such as boards, commissions, authorities and other agencies "of the Commonwealth government." *Id.* "Commonwealth government" is, in turn, defined as encompassing "the departments, boards, commissions, authorities and officers and agencies of the commonwealth, but the term does not include any political subdivision, municipal or other local authority, or any officer or agency of any such political subdivision or local authority." *Id.*

19

dentist, nurse or related health care personnel." 42 Pa.C.S. § 8522(b)(2). There is no corresponding exception for local agencies. Again, assuming the purported negligent conduct otherwise falls within the medical-professional exception, nothing in the Act makes the SCA and its contractors agents of the commonwealth in carrying out any duties assigned to it by the Act.

The Act required the DOH to create a State Plan. Counties that wish to receive state and federal funding for treatment and prevention efforts are required by the State Plan to designate SCAs to be responsible for program planning and the administration of federal and state-funded grants and contracts. (State Plan, Ch. 1, Single County Authority Requirements, R.R. at 160-69.) Counties are granted flexibility in how they choose to administer programs by allowing for the establishment of either a public entity within its local government structure, a private non-profit body, or an entity under the auspices of the county mental health/mental retardation programs. (R.R. at 161.) Most services are provided by independent facilities under contract with the SCAs. (*Id.*) Somerset County created the SCA, a county authority, which, in turn, contracted with Twin Lakes, a private entity, to provide drug and alcohol treatment. Nothing in this Act makes SCA or Twin Lakes agents of the Commonwealth in carrying out their responsibilities.

Moreover, to be a commonwealth agency, the entity must have been created by the Commonwealth. *See*, *e.g.*, *Rawlings v. Bucks County Water and Sewer Authority*, 702 A.2d 583, 587 (Pa. Cmwlth. 1997). In *Rawlings*, we held that the Bucks County Water and Sewer Authority was not entitled to sovereign immunity. In so holding, we reasoned that whereas the legislature was clear to designate agencies

20

organized under the Second Class Cities Port Authority Act[18] and the Housing Authority Law[19] as Commonwealth agencies, the legislature clearly intended that entities created pursuant to the former Municipality Authorities Act of 1945[20] would be deemed local agencies with the same immunity as the municipalities that created them.

The SCA was created by Somerset County, not the state, and is a county authority. *Rawlings*. As a county agency, the SCA and its agents are not commonwealth parties authorized to exercise the public powers of the Commonwealth.

Moreover, the medical-professional exception to sovereign immunity at 42 Pa.C.S. § 8522(b)(2) applies to "acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel," and a Commonwealth party is defined as "a Commonwealth agency and any employee thereof, but only with respect to an act within the scope of the employee's office or employment." 42 Pa.C.S. § 8501. As the trial court correctly observed, neither the employees of Twin Lakes nor the employees of the SCA are Commonwealth health care employees as contemplated by

---

[18] Act of April 6, 1956, P.L. (1955) 1414, *as amended*, 55 P.S. §§ 551-563.5.

[19] Act of May 28, 1937, P.L. 955, *as amended,* 35 P.S. §§ 1541-1568.1.

[20] Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§ 301-322, repealed by Section 3 of the Act of June 19, 2001, P.L. 287.

the Sovereign Immunity Act.  Thus, Appellants cannot establish that an exception to sovereign immunity applies in this case.[21]

Accordingly, for all of the foregoing reasons, we affirm.

_____

DAN PELLEGRINI, President Judge

---

[21] Appellants also argue that the trial court erred in ignoring the existence of disputed facts. Specifically, Appellants cite an organizational chart that purportedly demonstrates that the Commonwealth controls the treatment to be given under the State Plan and testimony related to Commonwealth funding and control of the SCA.

However, contrary to Appellants' assertion, the trial court's decision reflects that it applied the appropriate standard of review and, consequently, rejected Appellants' assertion that these facts, to the extent they were disputed, were material to the elements of the cause of action or the defenses presented.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce A. Casteel and Joy R. Casteel, :
Individually and as Administrators of :
Carly A. Miller, Deceased :
                :
          v. :
                :
Lonny Tinkey; George Lepley; :
John W. Benford and Shirley A :
Benford, husband and wife; :
Shirjon Inc., t/d/b/a Laurel :
Mountain Inn; the Commonwealth of :
Pennsylvania; the Pennsylvania :
Department of Health; and the :
Pennsylvania Advisory Counsel on :
Civil Drug and Alcohol Abuse :


Bruce A. Casteel and Joy R. Casteel, :
Individually and as Administrators of :
Carly A. Miller, Deceased :
                :
          v. :
                :
Commonwealth of Pennsylvania :
Department of Corrections :

Appeal of: Bruce A. Casteel and :
Joy R. Casteel, Individually and as :
Administrators of Carly A. Miller, : No. 1881 C.D. 2014
Deceased :

## **O R D E R**

AND NOW, this 5<u>th</u> day of <u>December</u>, 2016, the order of the Court of Common Pleas of Somerset County is affirmed.

_____
DAN PELLEGRINI, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce A. Casteel and Joy R. Casteel, :
Individually and as Administrators of :
Carly A. Miller, Deceased :
                                :
                                :  No.  1881 C.D. 2014
            v.                  :
                                :  Submitted:  November 16, 2015
Lonny Tinkey; George Lepley; :
John W. Benford and Shirley A. :
Benford, husband and wife; :
Shirjon Inc., t/d/b/a Laurel Mountain :
Inn; the Commonwealth of :
Pennsylvania; the Pennsylvania :
Department of Health; and the :
Pennsylvania Advisory Council on :
Civil Drug and Alcohol Abuse :
                                :
Bruce A. Casteel and Joy R. Casteel, :
Individually and as Administrators of :
Carly A. Miller, Deceased :
                                :
            v.                  :
                                :
Commonwealth of Pennsylvania :
Department of Corrections :
                                :
Appeal of:  Bruce A. Casteel and :
Joy R. Casteel, Individually and as :
Administrators of Carly A. Miller, :
Deceased :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH                          FILED:  December 5, 2016


Because I believe that Bruce A. Casteel and Joy R. Casteel (Appellants) have raised genuine issues of material fact relating to:  the duties of Defendants Pennsylvania Department of Health (DOH), the Pennsylvania Advisory Council on Drug and Alcohol Abuse (Advisory Council), and the Pennsylvania Department of Corrections (DOC) under the Pennsylvania Drug and Alcohol Abuse Control Act (Act), Act of April 14, 1972, P.L. 221, *as amended*, 71 P.S. §§1690.101–1690.115; whether Somerset County Single County Authority (Somerset SCA) and Twin Lakes Center for Drug and Alcohol Rehabilitation (Twin Lakes) were agents of the Commonwealth; and the application of the medical-professional exception to sovereign immunity, I respectfully dissent.

Specifically, while I concur with the Majority insofar as it affirms the order of the Court of Common Pleas of Somerset County (trial court) granting summary judgment in favor of Defendant Commonwealth of Pennsylvania, I respectfully dissent insofar as the Majority affirms the trial court's order granting summary judgment in favor of the remaining Defendants.

As the Majority aptly notes, the DOH, acting in accordance with section 4(a)(14) of the Act, 71 P.S. §1690.104(a)(14), developed and adopted a State Plan[1] relating to the medical treatment to be provided to persons dependent

---

[1] The Pennsylvania State Plan for the Control, Prevention, Intervention, Treatment, Rehabilitation, Research, Education and Training Aspects of Drug and Alcohol Abuse and Dependence Problems - State Fiscal Year 1993/94.  (R.R. at 158-69.)

upon alcohol or controlled substances at correctional institutions and other facilities. Indeed, the General Assembly has mandated DOH to develop a state plan for the provision of such treatment, which shall include emergency medical services, inpatient services, intermediate care, rehabilitation, and outpatient services. *See* Section 2301-A of the Act of April 9, 1929, P.L. 177, added by the Act of July 9, 2010, P.L. 348, 71 P.S. §613.1(1)(xv), *formerly* 71 P.S. §1690.104(a)(14). Section 6 of the Act, entitled "Drug or alcohol abuse services in correctional institutions, juvenile detention facilities and on probation and parole," provides, in relevant part:

> Medical detoxification and treatment shall be provided for persons physically dependent upon alcohol or controlled substances at correctional institutions and juvenile detention facilities or in available appropriate medical facilities.

71 P.S. §1690.106(a).

Counties that wish to receive state and federal funding for treatment and prevention efforts are required by the State Plan to designate SCAs to be responsible for program planning and the administration of federal and state funded grants and contracts. (Reproduced Record (R.R.) at 160-69.) These SCAs then implement the State Plan via direct contracts with DOH. In order to obtain this funding, Somerset County designated Somerset SCA as the party responsible for program planning and the administration of state and federal grants and contracts. Somerset SCA, in turn, contracted with Twin Lakes to provide the required drug and alcohol treatment services.

The primary dispute between the parties at oral argument on the summary judgment motion was whether a genuine issue of material fact existed as to whether Somerset SCA and Twin Lakes were agents of the Commonwealth.

(R.R. at 3, 9-11, 14-15, 18-19, 23-24.)  In resolving this motion, the trial court determined that Twin Lakes and Somerset SCA were not Commonwealth agencies. However, in reaching this determination, the trial court overlooked the significance of the relationship between DOH and Somerset SCA.  In this regard, the trial court acknowledged that it did not have any enabling legislation before it, but that it relied exclusively on Somerset SCA's Plan, entitled "Drug and Alcohol Commission of Somerset County Plan for Services," in which Somerset SCA declared itself a county agency.  Nevertheless, Somerset SCA's statement in its own Plan that it is a local agency is not determinative of whether Somerset SCA constitutes a Commonwealth agency for the purpose of sovereign immunity.  In fact, in determining an entity's status, our court has recognized that an entity may be considered a Commonwealth agency for one purpose, but a local agency for another.  *See*, *e.g.*, *City Council of City of Philadelphia v. Greene*, 856 A.2d 217 (Pa. Cmwlth. 2004).

In *Greene*, a housing authority was authorized by its enabling legislation and other portions of the statute to exercise the "public powers of the Commonwealth," and was permitted to act as an "agent of the State or any of its instrumentalities."  *Id.* at 220.  The authority argued that because it was a Commonwealth agency for the purpose of sovereign immunity, it was also a Commonwealth agency for the purpose of jurisdiction.  We noted, however, that *an entity may be recognized as a local agency for the purpose of jurisdiction, but as a Commonwealth agency for the purpose of sovereign immunity*.  In making the determination of whether an agency is subject to sovereign immunity, which is meant to protect the Commonwealth purse, we must consider:

> *whether the particular enabling statute grants authority to exercise the public powers of the Commonwealth* as

agent thereof, as well as to the source of the agency's creation, control, and funding.

*Id.* at 221-22 (emphasis added).

In contrast, a review of whether an agency was subject to our jurisdiction focused on the scope of operation and whether there was a statewide interest in a consistent resolution of legal issues impacting the agency in question. Concluding that there was no need for uniform statewide resolution of issues involving the power and duties of this local housing authority that operated exclusively within the city, we determined that the housing authority was a local agency for purposes of jurisdiction. Notably, we recognized that the analysis of whether an entity is a Commonwealth agency or local agency *necessarily depends upon the agency or entity involved and the particular purpose at issue. See also Al-Athariyyah v. Wilkes-Barre Housing Authority* (Pa. Cmwlth., No. 385 C.D. 2009, filed December 22, 2009), slip op. at 8 (noting that "an entity's status can vary depending on the issue for which the determination is made.").

Contrary to the above, in the present case, there clearly is a need for uniform statewide resolution of the issues involving the powers and duties of this agency, as such are derived directly from DOH, which has direct responsibility to ensure the services and funds are provided throughout the Commonwealth.

Moreover, here, the trial court found the following pertinent facts based upon the deposition testimony of Hector Gonzalez (Gonzalez) of DOH, Department of Drug and Alcohol Programs: DOH contracted with Somerset SCA to carry out the mandates of the Act, including the provision for drug and alcohol prevention and treatment rehabilitation services; the Commonwealth does not provide any of those services directly; the Commonwealth simply allocates funds for the delivery of drug and alcohol services; and, in Somerset County, all

treatment services are provided by Twin Lakes, which contracted with Somerset SCA to do so. However, Gonzalez also testified that the State Plan provides a chapter setting out the options for the structure and organization of the SCA, that DOH was responsible for ensuring that drug and alcohol services, and allocation of funds for the same, were provided to the citizenry throughout the Commonwealth, and that DOC and the Department of Public Welfare were responsible for ensuring that the requirements of the statute were implemented.[2] (R.R. at 266.)

Most importantly, according to Gonzalez, *if a county does not create an SCA or contract with another entity to provide the drug and alcohol treatment services required by the Act, <u>DOH would request proposals and directly obtain a provider to render services in that geographical area</u>. Gonzalez further testified the specific requirements of the treatment services are set forth in the contracts between DOH and the SCAs.* Beyond the general language of the Act and the chapter regarding the SCAs structure set forth in the State Plan, *Gonzalez stated that it would be the direct contracts between the SCAs and the DOH that would lay out exactly what the SCAs had to do*. (R.R. at 262-76.)

Moreover, the applicable State Plan *"contains requirements that become legally binding through incorporation into contracts between the DOH's Office of Drug and Alcohol Programs (ODAP) and the Single County Authorities* (SCAs)." (R.R. at 159) (emphasis added). Additionally, as part of its "Statement of Policy" for "Single County Authority," the State Plan states:

> This Chapter is intended to *establish a statewide system of agencies* which shall have the responsibility *for assisting the Department in planning for community-*

---

[2] The Department of Public Welfare is now known as the Department of Human Services.

*based services.* It is the position of the Department that no central authority can determine precisely what services are necessary in each of the 67 counties of this Commonwealth. Consequently, the emphasis in this State Plan is on the establishment of community-based drug and alcohol prevention, intervention and treatment services. The State Plan allows for the formation of SCAs to provide services and receive funding, and provides the exclusive options for their organizational structures.

*Id*. at 162 (emphasis added).

Further, Somerset SCA's Plan includes the following "Organizational Chart," showing the Commonwealth in the highest position, superior to the Somerset County Commissioners and the Somerset SCA Director thereunder:



*Id.* at 173.

In sum, a review of the Act, State Plan, Somerset SCA's Plan, and the testimony of Gonzalez show that a genuine issue of material fact exists as to whether the Somerset SCA and/or Twin Lakes were operating as agents of the Commonwealth. Further, absent review of the enabling legislation and the specific contract between DOH and Somerset SCA, a genuine issue of material fact exists as to the agency relationship between Somerset SCA and the Commonwealth and the amount of control that the Commonwealth exerts over Somerset SCA.

For these reasons, I would reverse the trial court's order entering summary judgment in favor of Defendants DOH, Advisory Council, and DOC, and remand for further proceeding relating to these Defendants.

_____
PATRICIA A. McCULLOUGH, Judge