614 A.2d 226

Thomas SHERK and Susan Sherk, His Wife, Appellants,

v.

COUNTY OF DAUPHIN, Mental Health and Retardation Services, Harrisburg State Hospital and Linda Weigel, Administrator of the Estate of Mark E. Jordan, Appellees.

Supreme Court of Pennsylvania.

Submitted May 27, 1992.

Decided Sept. 18, 1992.

Gary M. Lightman, Harrisburg, for appellants.

John M. Abel, Deputy Atty. Gen., for appellees.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

LARSEN, Justice:

Appellants, Thomas Sherk and Susan Sherk, his wife, appeal from an opinion and order of the Commonwealth Court, 128 Pa.Cmwlth. 150, 562 A.2d 1025, which reversed an order of Court of Common Pleas of Dauphin County that overruled preliminary objections in the nature of a demurrer raising the defense of sovereign immunity of appellee Harrisburg State Hospital. The Commonwealth Court remanded the case to the Dauphin County Common Pleas Court with directions to that court to sustain the preliminary objections of Harrisburg State Hospital and dismiss the Sherks' complaint. For the reasons that follow, we reverse.

At the outset we note that in reviewing the grant or denial of preliminary objections in the nature of a demurrer, we adhere to the following standard:

All material facts set forth in the Complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] The question present-

ed by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 15–17, 606 A.2d 444, 446 (1992), citing *Kyle v. McNamara & Criste*, 506 Pa. 631, 634, 487 A.2d 814, 816 (1985).

Pursuant to that standard, the record discloses that the allegations contained in the Sherks' complaint filed against the County of Dauphin, Mental Health and Retardation Services, Harrisburg State Hospital and Lina Weigel, as Administrator of the Estate of Mark D. Jordan, which for purposes of this review we accept as true, aver that on June 14, 1986, appellant Thomas Sherk was employed as a police officer with the the police department of Lower Paxton Township, Dauphin County, Pennsylvania. On that date, Thomas Sherk was on duty and was dispatched to respond to and investigate a report of a suspicious person described in the report as a white male with a gun. Approximately one-half hour after embarking on the investigation assigned to him, officer Sherk encountered and arrested Mark A. Jordan (Jordan) who had a history of suffering from mental illness. While officer Sherk was attempting to control and subdue Jordan, a scuffle erupted during which Jordan gained possession of officer Sherk's weapon. Jordan fired a shot from that weapon wounding officer Sherk in the right thigh. Jordan then fled the scene taking officer Sherk's gun with him. Shortly thereafter, Jordan committed suicide by shooting himself with the gun he had taken from officer Sherk.

From October 12, 1985 until May 3, 1986, when he was released, Jordan had been a psychiatric patient in Harrisburg State Hospital.[1] The Sherks' complaint alleges that the appellee Harrisburg State Hospital acted recklessly, wantonly and negligently in caring for and in prematurely releasing Jordan. The Sherks' complaint further seeks damages for the bodily

1. Additionally, from time to time, Jordan had been a patient in the care of appellee Mental Health and Retardation Services which is funded and administered by appellee Dauphin County.

injuries sustained by Thomas Sherk at the hands of Jordan, allegedly caused by the "reckless, wanton and negligent" conduct of the appellees.

Appellee, Harrisburg State Hospital responded to the Sherks' complaint for damages by filing preliminary objections in the nature of a demurrer averring, *inter alia:* (a) that Harrisburg State Hospital is a Commonwealth party and is immune from suit; (b) that the Sherks' complaint fails to aver any facts which brings their claim within a statutory exception to sovereign immunity; and (c) that sovereign immunity is not waived by the facts pleaded by the Sherks. Harrisburg State Hospital's objections in the nature of a demurrer concluded by asking for dismissal of the Sherks' complaint. By order dated December 6, 1988, Harrisburg State Hospital's demurrer was denied by the trial court. Subsequently, the question of sovereign immunity was certified by the trial court as a controlling question of law and an appeal to the Commonwealth Court was filed by Harrisburg State Hospital. The Commonwealth Court reversed the order of the Dauphin County Common Pleas Court and remanded the case to that court with directions to sustain the preliminary objection in the nature of a demurrer and dismiss the complaint. Upon petition filed by appellants Thomas and Susan Sherk, we granted allowance of appeal to consider the question of whether appellee Harrisburg State Hospital is shielded from liability in this case by the doctrine of sovereign immunity.[2]

The common law doctrine of sovereign immunity which provided that the Commonwealth was immune from liability for tortious acts unless the Legislature consented to suit was abolished by this Court in *Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978). The Legislature responded to our decision in *Mayle* by enacting the Act of

2. It is not disputed that Harrisburg State Hospital is a Commonwealth party as defined by the Act of Oct. 5, 1980, P.L. 693, No. 142, § 221(*l*), 42 Pa.C.S. § 8501:

"Commonwealth party." A Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment.

Sept. 28, 1978, P.L. 788, No. 152 § 1, 1 Pa.C.S. § 2310, which provides as follows:

**§ 2310. Sovereign immunity reaffirmed; specific waiver**

Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) unless otherwise specifically authorized by statute.

Chapter 85 of The Judicial Code, 42 Pa.C.S.A. § 8501, et seq., contains the statutory provisions relating to the specific waiver of sovereign immunity. Section 8521 (42 Pa.C.S. § 8521) provides: "Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purposes of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise."

Exceptions to sovereign immunity are provided for in Section 8522 (42 Pa.C.S. § 8522) which sets forth that sovereign immunity is waived in certain specific enumerated instances "for damages arising out of a negligent act where the damages would be recoverable under common law or a statute creating a cause of action if the injury was caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. § 8522(a). At the time of the events complained of in the Sherks' complaint, there were eight specific enumerated exceptions relating to acts by a Commonwealth party to which the defense of sovereign immunity had been specifically waived by the Legislature. Briefly, those categories are: (1) Vehicle liability; (2) Medical-professional liability; (3) Care, custody or control of personal property; (4) Commonwealth

real estate, highways and sidewalks; (5) Potholes and other dangerous conditions; (6) Care, custody or control of animals; (7) Liquor store sales; (8) and National Guard activities.[3] The Sherks contend that the damages suffered by them arise out of the "reckless, wanton and negligent" acts of appellee Harrisburg State Hospital in caring for and prematurely releasing a psychiatric patient (Jordan), which damages would be recoverable by them under common law if the injury was caused by a person to whom the defense of sovereign immunity is not available.

> Under well established precedent, if plaintiff produces sufficient evidence to demonstrate the mental condition of [the patient] warranted the duty asserted [by the plaintiff], the hospital would clearly be responsible for injury to the person or property of third parties where such injury resulted from a hospital's negligent failure to meet its responsibility. (citations omitted)

*Vattimo v. Lower Bucks Hospital*, 502 Pa. 241, 258, 465 A.2d 1231, 1240 (1983) (Concurring and Dissenting Opinion by then Justice now Chief Justice Nix). The damages suffered by the Sherks would be recoverable under common law if they had been caused by a person who was not able to assert the defense of sovereign immunity. See *Rhines v. Herzel*, 481 Pa. 165, 392 A.2d 298 (1978); and *Evanuik v. University of Pittsburgh*, 234 Pa.Super. 287, 338 A.2d 636 (1975).

The appellants, Thomas and Susan Sherk, argue that the medical-professional liability exception to sovereign immunity (42 Pa.C.S. § 8522(b)(2)) applies to this case and thus, the defense of sovereign immunity to their claims for damages against appellee Harrisburg State Hospital is not available. Section 8522(b)(2) provides as follows:

> (b) **Act which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised for damages caused by:

3. Effective December 11, 1986, Section 8522(b) was amended to include Toxoids and vaccines as a ninth specific exception to sovereign immunity.

**(2) Medical-professional liability.**—Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

The Commonwealth Court, citing our opinions in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) and, *Chevalier v. City of Philadelphia*, 516 Pa. 316, 532 A.2d 411 (1987), and its own opinion in *Moore v. Department of Justice*, 114 Pa.Commow. 56, 538 A.2d 111 (1988), concluded that "the criminal acts of a discharged mental patient did not constitute acts of the Commonwealth or its employees for which immunity is waived under the medical-professional exception." The Commonwealth Court observed that "harm caused by third persons *may not be imputed* to a local agency or its employees", and held that "since Sherk's injuries were caused by the criminal acts of a third party, Jordan, the Harrisburg [State] Hospital is insulated from all liability." We disagree. None of these cases relied upon by the Commonwealth Court involved a psychiatric patient negligently cared for and recklessly and wantonly released into the community as is alleged in the case before us. Moreover, one of those cases, *Moore v. Department of Justice, supra.*, by clear inference, recognizes that a state hospital, with the medical expertise to foresee that a mental patient who is prematurely released may harm and injure others, is subject to suit and liability for such harm and injury.

*Moore*, involved an injured plaintiff seeking damages of Commonwealth party defendants[4] for injuries Moore sustained when he was shot five times by an inmate/prisoner of the state prison who had been granted a two-day home furlough, but who had failed to return when the two days had elapsed and was then reported as an escapee. Moore argued that his allegations that the Commonwealth party defendants had engaged in willful misconduct and were otherwise negli-

4.  Moore filed three separate complaints in trespass against the following: (i) the Commonwealth of Pennsylvania, Department of Justice, now Office of General Counsel; (ii) Julius T. Cuyler, Superintendent of the State Correctional Institution at Grateford; and (iii) Lawrence Reid, Director of Treatment, and counsellors Dillman and Zelles.

gent in granting the two-day furlough and in failing to properly diagnose and treat the released inmate/prisoner's psychiatric condition, brought his claim within the statutory exception to sovereign immunity for medical-professional liability. In rejecting Moore's contention of waiver, the Commonwealth Court concluded that: "A state prison furlough of an inmate pursuant to a statutorily authorized program is not comparable to a state hospital's release of a diagnosed mental patient. A prison does not have the expertise and facilities which would enable it to foresee that a furloughed inmate's *psychiatric deficiencies* could cause him to harm another." [5] 538 A.2d at 114.

The other two cases, *Mascaro* and *Chevalier*, dealt with a consideration of governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, et seq. and specific exceptions thereto. In *Mascaro*, the plaintiffs sought damages from the City of Philadelphia for injuries suffered when an escapee of a juvenile detention center and an accomplice invaded plaintiffs' home and, among other things, beat

---

5. In *Allentown State Hospital v. Gill*, 88 Pa.Commow. 331, 488 A.2d 1211 (1985), the plaintiff was assaulted by a former mental patient who had been released from a state hospital. The plaintiff sued the state hospital and three of its employees alleging that the former patient had been negligently supervised and released from the hospital. The Commonwealth party defendants defended on the grounds of sovereign and governmental immunity and filed motions for judgment on the pleadings. The trial court denied the defendants' motions and held that sovereign immunity had been waived by the provisions of 42 Pa.C.S. § 8522(b)(2). The Commonwealth Court affirmed and cited section 319 of the Restatement (Second) of Torts which provides:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

The court in Moore, distinguished *Gill* stating that:

> [T]he mental patient's harmful acts [in *Gill*] could not be regarded as having *superseded* the hospital's *own* original negligence in releasing the mental patient. A cause is not considered superseding when it is a foreseeable or normal incident of the risk created by the original actor's negligence.
>
> \*     \*     \*     \*     \*     \*
>
> A mental hospital is specifically staffed with psychiatric and medical professionals and has specialized facilities which enable it to foresee the risk of a negligently released mental patient harming another.

and raped Mrs. Mascaro and her minor daughter. The Mascaros alleged that the City's negligent maintenance of the detention center facility permitted the escape. The Mascaros sought to impose liability on the City under the "care, custody or control of real property" exception to governmental immunity provided by 42 Pa.C.S. § 8542(b)(3). Although we recognized in *Mascaro* that, "Acts of [a] local agency or its employees which make property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit", the majority went on to hold:

> [T]he real estate exception [to the governmental immunity statute] can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

*Mascaro v. Youth Study Center*, 514 Pa. at 363, 523 A.2d at 1124. The holding in *Mascaro* is specifically limited to the real property exception to governmental immunity which was before the court in that case. Additionally, in construing the language of section 8541, the majority in *Mascaro* stated:

> Acts of *others*, however are specifically excluded in the general immunity section (42 Pa.C.S. § 8541), and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees. (emphasis in original).

*Id.* 514 Pa. at 362, 523 A.2d at 1124. Thus, the court's interpretation of the governmental immunity statute before the court in *Mascaro* precludes imposing liability upon a governmental unit by imputing the negligence of a third party to the governmental unit or any of its employees. *Crowell v. City of Philadelphia*, 531 Pa. 400, 403, 613 A.2d 1178 (1992).

In *Chevalier*, the plaintiff was mugged by unknown assailants in a parking lot owned and operated by the City of Philadelphia. The plaintiffs alleged that the City's failure to

provide proper security at the parking lot facilitated the mugging. The plaintiffs attempted to have liability imposed on the City under the exception for "a dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems" provided at 42 Pa.C.S. § 8542(b)(4). Citing *Mascaro*, this court held in *Chevalier* that:

> The City's Motion for Judgment on the Pleadings is properly granted because the harm caused by third persons may not be imputed to a local agency or its employees.

*Chevalier v. City of Philadelphia*, 516 Pa. at 319, 532 A.2d at 413. The court, in *Chevalier*, relied upon the interpretation adopted in *Mascaro* that section 8541 prohibits the imputing of a third party's negligence to a governmental unit or any of its employees.

Contrasting *Mascaro* and *Chevalier* with the instant case, it is the *sovereign immunity statute*, 42 Pa.C.S. § 8521, et seq., and the "Medical-professional liability" exception to that statute (§ 8522(b)(2) which is before us here, rather than the *governmental immunity statute* (42 Pa.C.S. § 8541, et seq.) and the real property exception (§ 8541(b)(3)) and the trees, traffic controls and street lighting exception (§ 8541(b)(4)) which was before us in *Mascaro* and *Chevalier* respectively. Moreover, the present case does not deal with *imputing* the harm caused by a third party (Jordan) to a Commonwealth party (Harrisburg State Hospital). Rather, we are faced here with allegations of reckless, wanton and negligent conduct on the part of Harrisburg State Hospital, et al., in the care and release of a psychiatric patient (Jordan) as constituting a substantial and foreseeable factor in bringing about the harm to Sherk, which allegations must be accepted as true for purposes of Harrisburg State Hospital's demurrer.

Finally, the Commonwealth Court cited its opinion in *Matter of Goryeb*, 125 Pa.Commow. 271, 557 A.2d 822 (1989), as controlling precedent. In *Goryeb*, a Commonwealth party (Clarks Summit State Hospital) discharged a psychiatric patient who had been diagnosed as "severely mentally disabled and in need of treatment", and who met the statutory criteria

for an involuntary emergency admission under the provisions of the Mental Health Procedures Act, 50 P.S. § 7301(a). Within a week of his release, the mental patient went to the premises of his former girl-friend where he found her, her current boy-friend and another male friend. The released patient shot all three of them, seriously wounding his former girl-friend and her current boy-friend, and killing the male friend, Emil Goryeb. The injured plaintiffs in *Goryeb* filed suit against the Commonwealth parties (Commonwealth of Pennsylvania, Department of Public Welfare; Clarks Summit State Hospital; and Yao C. Wang, M.D.) alleging, inter alia, gross negligence and willful misconduct in releasing the psychiatric patient when it was known or should have been known that the patient was a danger to himself and to others. The Commonwealth Court, citing and relying on *Mascaro*, and also citing *Chevalier* and *Moore*, held in *Goryeb* that the shootings carried out by the released psychiatric patient constituted third party criminal acts for which immunity of the Commonwealth was not waived. The Commonwealth Court described that case as "factually indistinguishable" from the instant case and concluded that "the medical-professional liability exception must be limited to injuries suffered by patients, and does not include injuries inflicted upon others by those patients." On appeal, we reversed. *Goryeb v. Commonwealth, Department of Public Welfare*, 525 Pa. 70, 575 A.2d 545 (1990).

We rejected the notion that *Mascaro* and *Chevalier* were dispositive of the issues raised by the complaint in *Goryeb*. Although we recognized the similarities between the Political Subdivision Tort Claim Act and the Sovereign Immunity Act, we declined to apply our narrow interpretations of the Political Subdivision Tort Claims Act and the specific exceptions thereto in *Mascaro* and *Chevalier* to the Sovereign Immunity Act and the medical-professional liability exception under consideration in *Goryeb*. The late Justice McDermott, writing for the majority, noted that the issues in *Mascaro* and *Chevalier* involved the Political Subdivision Tort Claim Act *alone*, whereas the issues raised in plaintiffs' complaint in *Goryeb* involved the interplay between the Sovereign Immunity Act and the

Mental Health Procedures Act. That same interplay is involved in the issues raised in the instant case.

■ Section 114 of the Mental Health Procedures Act, 50 P.S. § 7114, provides:

(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

We held in *Goryeb* that the medical-professional liability exception to sovereign immunity, 42 Pa.C.S. § 8522(b)(2), must be read and construed in *pari materia*[6] with Section 114 of the Mental Health Procedures Act. 50 P.S. § 7114. In so doing, we announced the following rule.

When a Commonwealth party participates in a decision that a person be examined, treated or discharged pursuant to the Mental Health Procedures Act, such a party shall not be civilly or criminally liable for such decision or for any of its consequences except in the case of willful misconduct or gross negligence. Conversely, and most importantly to the instant case, a Commonwealth party participating in a decision to examine, treat or discharge a mentally ill patient within the purview of the Mental Health Procedures Act

6. The Statutory Construction Act of 1972 provides, in relevant part, as follows:

§ 1932 **Statutes in pari materia**

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute.

1 Pa.C.S. § 1932.

who commits willful misconduct or gross negligence can be liable for such decision.

*Goryeb v. Commonwealth, Department of Public Welfare,* 525 Pa. 78, 575 A.2d at 548–549. Thus, a Commonwealth party who commits willful misconduct or gross negligence in participating in a decision to examine, treat or discharge a patient pursuant to the Mental Health Procedures Act shall be "liable for such decision or for any of its consequences." We have further held that the language "any of its consequences" clearly indicates a recognition that discharging a mentally disabled patient, especially one who has been classified as a clear and present danger to himself and/or others constitutes a potential serious danger, not only to himself but to others. *Id.* In the present case, an alleged consequence of the reckless, wanton and negligent release of the patient Jordan was the injuries and damages suffered by officer Sherk.

Appellee, Harrisburg State Hospital argues that the rule of statutory construction pertaining to statutes in *pari materia* was misapplied in *Goryeb* and does not apply here for the reason that the Sovereign Immunity Act and the Mental Health Procedures Act are inconsistent with one another. The inconsistency advocated by the appellee hospital is that the Sovereign Immunity Act speaks of liability "for damages arising out of a negligent act" (42 Pa.C.S. § 8522(a)) whereas the Mental Health Procedures Act limits liability to acts of willful misconduct or gross negligence (50 P.S. § 7114(a)). We are not persuaded that this difference precludes *pari materia* construction of the two acts. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921. One of the rules which the Legislature has provided to ascertain and effectuate its intention is the rule that statutes in *pari materia* shall be construed together. Statutes are in *pari materia* "when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S. § 1932. The provisions of 42 Pa.C.S. § 8522 and section 114 of the Mental Health Procedures Act relate to the "same persons and things or the same class of persons or things", namely, the liability of

health care employees of Commonwealth parties for acts taken and decisions made relating to the furnishing of health care. Thus, we are constrained to apply the pertinent rules of statutory construction and construe the medical-professional liability exception of the Sovereign Immunity Act in conjunction with and as limited by the provisions of Section 114 of the Mental Health Procedures Act. *Id.*

■ The appellee, Harrisburg State Hospital, invites us to overrule our recent decision in *Goryeb v. Commonwealth, Department of Public Welfare,* supra. and immunize it as a Commonwealth party from all liability for injuries and damages caused by willful misconduct and gross negligence in releasing a mental patient from institutional care. We decline the invitation.

> To exculpate and/or immunize a party who, through gross negligence or willful misconduct, has unleashed into the community a person *non compos mentis,* who has been diagnosed to be a clear and present danger to himself or others, is neither consistent with the required *in pari materia* construction of the relevant statutes, nor public policy, nor good sense...."

*Id.* 525 Pa. 79, 575 A.2d at 549. Thus, we reaffirm that pursuant to the medical-professional liability exception to the Sovereign Immunity statute (42 Pa.C.S. § 8522(b)(2) read in *pari materia* with section 114 of the Mental Health Procedures Act (50 P.S. § 7114), sovereign immunity has been waived and a Commonwealth party may be liable for harm inflicted by a third party where the gross negligence or willful misconduct of the Commonwealth party in treating and releasing a psychiatric patient is a substantial factor in causing the harm.

The order of the Commonwealth Court is reversed and the this case is remanded to the Court of Common Pleas of Dauphin County for proceedings consistent with this opinion.

CAPPY, J., files a concurring opinion.

NIX, C.J., concurs in the result.

ZAPPALA, J., files a dissenting opinion.

CAPPY, Justice, concurring.

I concur in the result reached by those of my colleagues joining the Opinion Announcing the Judgment of the Court.

I believe that the only issue to be addressed in this opinion is the question of whether the appellee is entitled to blanket sovereign immunity as the trial court found in sustaining appellee's preliminary objection. I agree that our recent decision in *Goryeb v. Commonwealth, Department of Public Welfare,* 525 Pa. 70, 575 A.2d 545 (1990), sets forth certain specific circumstances under which appellee could be found liable and, thus, controls the issue of immunity pursuant to the Sovereign Immunity Act, 42 Pa.C.S. § 8521, *et. seq.* However, in concurring in the result, I do not subscribe to the reasoning or the rationale as offered in the majority opinion.

ZAPPALA, Justice, dissenting.

Although this Court's decision in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987) involved an interpretation of governmental immunity under the Political Subdivision Tort Claims Act, it is instructive on the issue of whether the acts of third parties may impose liability upon a Commonwealth party by imputing the negligence of the third party to the Commonwealth party. *Mascaro* emphasized the importance of analyzing the precise language of the immunity statute itself in determining whether the legislative intent was to expose a governmental entity to liability. The statutory language is critical because exceptions to the rule of sovereign immunity must be narrowly interpreted given the expressed legislative intent to insulate Commonwealth parties from tort liability. See, *Mascaro,* 514 Pa. at 361, 523 A.2d at 1123.

The general immunity section of the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, provides that "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to another or property caused by any act of the local agency or an employee thereof or any other person." We stated in *Mascaro,* that acts of others are specifically excluded in the general immunity section and are nowhere discussed in the enumerated

exceptions to the statute. "... [A]ny harm that others cause may not be imputed to the local agency or its employees." *Mascaro*, 514 Pa. at 363, 523 A.2d at 1124. Thus, acts of third parties will not impose liability upon a local agency even though those acts fall within the exceptions to the statute. It is only the acts of the local agency or its employees that will make the local agency amenable to suit.

The general rule governing sovereign immunity is that immunity is not waived except as provided in the statute. 42 Pa.C.S.A. § 8521(a). The legislature has waived sovereign immunity in only nine specific instances for damages arising out of a negligent act where damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person to whom sovereign immunity did not apply. 42 Pa.C.S.A. § 8522. Subsection (b) of § 8522 specifically provides that liability may be imposed on the Commonwealth for the *"acts by a Commonwealth party "* that fall within the specific exceptions.

As in the Political Subdivision Tort Claims Act, the sovereign immunity statute does not include any exception to the statute for the acts of others. The statute clearly limits the Commonwealth's liability solely to acts by a Commonwealth party. The medical-professional liability exception provides that the defense of sovereign immunity shall not be raised to claims for damages caused by "[a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." 42 Pa.C.S.A. § 8522(b)(2). This exception does not permit liability to be imposed on the Commonwealth due to the criminal conduct of a third party.

The majority improperly imputes liability to the Commonwealth based upon the harm caused by a third person, rather than a Commonwealth party. I agree with the Commonwealth Court that the medical-professional liability exception was intended to impose liability on the Commonwealth only for injuries suffered by patients and does not extend to injuries inflicted upon others by those patients. The majority's expansive interpretation is at odds with our holding in

*Mascaro* that exceptions to the immunity statute must be narrowly interpreted. I would affirm the order of the Commonwealth Court.