# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tina M. Byrne, Individually and as    :
Administratrix of the Estate of    :
Robert Eugene Beaverson, Deceased,    :
                  Appellant    :
    :
        v.    :    No. 561 C.D. 2018
    :    Argued: February 11, 2019
    :
Commonwealth of Pennsylvania,    :
Department of Military and    :
Veterans Affairs, and    :
Hollidaysburg Veterans' Center    :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**          **FILED: March 19, 2019**

Appellant Tina M. Byrne, individually and as Administratrix of the Estate of Robert Eugene Beaverson, deceased (collectively, the Beaverson Estate), appeals from an order of the Court of Common Pleas of Blair County (trial court), dated March 27, 2018. The trial court granted the motion for judgment on the pleadings (Motion) filed by the Commonwealth of Pennsylvania (Commonwealth), the Department of Military and Veterans Affairs (Department), and Hollidaysburg Veterans' Center (Center) (collectively, Appellees), thereby dismissing the Beaverson Estate's survival and wrongful death action against Appellees. For the reasons set forth below, we affirm in part and reverse in part.

# I. BACKGROUND

The Beaverson Estate's Complaint sets forth the following factual averments. The Center is a skilled nursing center located in Blair County, Pennsylvania, and is owned, operated and/or controlled by the Commonwealth and the Department. (Reproduced Record (R.R.) at 8-9; Compl. at ¶¶ 8-9, 17.) On March 30, 2015, Robert Beaverson (Decedent) was admitted to the Center following a change in mental status. (R.R. at 10; Compl. at ¶ 20.) At that time, Decedent "was noted to be paranoid, confused, and suffering the effects of Alzheimer's dementia." (R.R. at 10; Compl. at ¶ 22.) From June 9, 2015, through August 12, 2015, Decedent was involved in several altercations with other residents of the Center, one of which involved Resident 4757. (R.R. at 11; Compl. at ¶ 25.) During each of those altercations, the Center's staff redirected Decedent and the other resident before any injuries had resulted. (R.R. at 11; Compl. at ¶ 26.)

On August 29, 2015, at 6:50 p.m., however, Decedent was involved in a second altercation with Resident 4757, during which Resident 4757 pushed Decedent, causing Decedent to fall to the ground and hit his head. (R.R. at 11-12; Compl. at ¶¶ 25, 31, 33-34.) A certified nursing assistant (CNA) for the Center observed the altercation between Decedent and Resident 4757 but did not intervene. (R.R. at 12; Compl. at ¶ 30.) At 8:04 p.m., the CNA called the Center's registered nurse (RN) on duty at the Center to the unit hallway where the altercation had taken place and explained to the RN what had happened. (R.R. at 12; Compl. at ¶ 31.) At that time, Decedent was bleeding from the back of the head, but he was alert and talkative, his cognitive function remained normal, and he informed Center staff that his head only hurt "a little." (R.R. at 12; Compl. at ¶¶ 32, 37-38.) A licensed

2

practical nurse for the Center applied pressure to Decedent's wound and took precautions to protect Decedent's cervical spine. (R.R. at 12; Compl. at ¶ 36.)

Decedent was transported to University of Pittsburgh Medical Center (UPMC) Altoona for evaluation, where he underwent a CT scan of his head and brain. (R.R. at 12; Compl. at ¶¶ 39-40.) The CT scan revealed that Decedent had sustained a small acute right parafalcine subdural hematoma. (R.R. at 12; Compl. at ¶ 41.) The medical professionals at UPMC Altoona admitted Decedent to the intensive care unit. (R.R. at 13; Compl. at ¶ 44.) Thereafter, on September 2, 2015, UPMC Altoona discharged Decedent, and Decedent returned to the Center. (R.R. at 13; Compl. at ¶ 48.) Around that same time, UPMC Altoona medical professionals informed Decedent's daughter that Decedent could make a full recovery with daily therapy. (R.R. at 13; Compl. at ¶ 49.) Following Decedent's return to the Center, however, Decedent's condition continued to decline. (R.R. at 14-15; Compl. at ¶¶ 54-61, 63-64.) Even though a follow-up CT scan on September 17, 2015, revealed that Decedent's acute brain bleed had resolved, Decedent died on the evening of September 24, 2015. (R.R. at 15; Compl. at ¶¶ 68, 70.)

The Beaverson Estate filed this survival and wrongful death action against Appellees. In its Complaint, the Beaverson Estate alleged, *inter alia*, that Appellees, as well as their agents, servants, and/or employees, were medically negligent because they breached certain duties owed to Decedent, thereby causing Decedent to suffer pain, distress, and ultimately death. Appellees further alleged that sovereign immunity does not apply to insulate Appellees from liability in this case because the General Assembly waived sovereign immunity on behalf of

3

Appellees pursuant to the medical-professional liability exception set forth in 42 Pa. C.S. § 8522(b)(2).

Following the close of the pleadings, Appellees filed their Motion. In their Motion and supporting brief, Appellees argued that the trial court should dismiss the Beaverson Estate's case in its entirety because Appellees are protected by sovereign immunity and the Beaverson Estate had not alleged any facts in its Complaint to establish that the case falls within the medical-professional liability exception or any other exception to sovereign immunity.[1] More specifically, Appellees argued that the medical-professional liability exception did not apply because the damages sought by the Beaverson Estate were caused, not by the actions of a Commonwealth health care employee, but rather by the actions of another Center resident. Appellees also argued that the medical-professional liability

[1] In the alternative, Appellees also argued that the trial court should: (1) dismiss the Commonwealth from the case because the Commonwealth enjoys absolute immunity pursuant to 1 Pa. C.S. § 2310; and (2) dismiss the Beaverson Estate's claim for damages for wrongful death because such damages are not recoverable against a Commonwealth agency pursuant to the damages limitation provision set forth in 42 Pa. C.S. § 8528(c). In its brief in opposition to Appellees' Motion, the Beaverson Estate stipulated to the removal of the Commonwealth as a party. As a result, that issue is not before us. With respect to the damages sought by the Beaverson Estate for wrongful death, the trial court concluded that, "in cases involving the Commonwealth, medical expenses are only recoverable in a survival action by virtue of the [']Sovereign Immunity Act's['] damages provision." (Trial Ct. Op. at 13.) Citing to page 13 of the trial court's decision, Appellees contend that the trial court essentially "recognized that 42 Pa. C.S. § 8528(c) would have precluded [the Beaverson Estate] from seeking [its] requested damages for [Decedent's] 'wrongful death' even if [its] negligence claims had not been barred by [sovereign immunity]." (Beaverson Estate's Br. at 10 n.2.) Appellees further contend that the Beaverson Estate has not challenged that portion of the trial court's decision on appeal. While we agree with Appellees that the Beaverson Estate has not challenged the portion of the trial court's decision addressing damages on appeal, and, therefore, that issue is not before this Court, we would be remiss not to point out that we do not believe that the trial court's decision is as broad sweeping as Appellees contend. In its decision, the trial court only appears to address medical expenses and not the other damages for wrongful death sought by the Beaverson Estate. The extent of the trial court's ruling on this issue will need to be further addressed by the trial court below.

4

exception did not apply to claims of corporate negligence. In opposition to Appellees' Motion, the Beaverson Estate argued: (1) Appellees are not insulated from liability simply because Decedent was not pushed by a Commonwealth health care employee; (2) its Complaint alleged negligent acts of individual health care employees and not just corporate negligence; and (3) public policy favors allowing its claims of corporate negligence to proceed. By opinion and order dated March 27, 2018, the trial court granted Appellees' Motion, thereby dismissing the Beaverson Estate's survival and wrongful death action against Appellees. In so doing, the trial court reasoned that the Beaverson Estate's claims were barred by sovereign immunity because the Beaverson Estate's claims either attempted to impute liability for the actions of a third party to Appellees or sounded in corporate negligence. This appealed followed.

## II. ARGUMENTS ON APPEAL

On appeal,[2] the Beaverson Estate argues that the trial court committed an error of law by granting Appellees' Motion because: (1) public policy favors overturning the Pennsylvania Supreme Court precedent established by *Moser v. Heistand*, 681 A.2d 1322 (Pa. 1996), that corporate negligence claims against Commonwealth-owned medical facilities are barred by sovereign immunity; and (2) in addition to allegations of corporate negligence, its Complaint also sets forth allegations of negligent acts of individual Commonwealth health care employees

---

[2] "Our scope of review of an order granting a motion for judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether questions of material fact remain outstanding, such that the case should have gone to the jury." *Tobias v. Halifax Twp.*, 28 A.3d 223, 225 n.4 (Pa. Cmwlth. 2011), *appeal denied*, 47 A.3d 849 (Pa. 2012). "Our standard of review of an order granting or denying a motion for judgment on the pleadings is plenary." *Id.*

5

and, therefore, Appellees' sovereign immunity is waived by the medical-professional liability exception.[3]

## III. DISCUSSION

### A. Sovereign Immunity Generally

"Generally, sovereign immunity protects Commonwealth officials and employees acting within the scope of their duties from civil liability." *Kull v. Guisse*, 81 A.3d 148, 154 (Pa. Cmwlth. 2013), *appeal denied*, 91 A.3d 163 (Pa. 2014). This protection extends to claims for intentional torts, provided that the Commonwealth employees were acting within the scope of their employment. *Id.* at 157. Pursuant to Section 8522 of the Judicial Code (Code), 42 Pa. C.S. § 8522, which is often referred to as the "Sovereign Immunity Act," however, the General Assembly has waived sovereign immunity in certain limited situations involving the negligence of a Commonwealth employee. 42 Pa. C.S. § 8522. In *La Frankie v. Miklich*, 618 A.2d 1145 (Pa. Cmwlth. 1992) (en banc), this Court observed:

> [T]he proper test to determine if a Commonwealth employee is protected from liability pursuant to . . . [Section 8522 of the Code] is to consider whether the Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the nine exceptions to sovereign immunity.

*La Frankie*, 618 A.2d at 1149. "Because of the clear intent to insulate [the] government from exposure to tort liability, the exceptions to [sovereign] immunity are to be strictly construed." *Dean v. Dep't of Transp.*, 751 A.2d 1130, 1132 (Pa. 2000). Under the medical-professional liability exception to sovereign

---

[3] We have reordered the Beaverson Estate's issues for purposes of discussion.

6

immunity, the General Assembly has waived sovereign immunity for "[a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." Section 8522(b)(2) of the Code. The medical-professional liability exception, however, does not extend to the acts of the Commonwealth institution— *i.e.*, to claims of corporate negligence. *See Moser*, 681 A.2d at 1326. As our Supreme Court explained in *Moser*:

> A cause of action in corporate negligence is based on the negligent acts of an institution. For such a cause of action to be viable against a Commonwealth hospital, sovereign immunity for the acts of the institution must be waived. Institutions do not act on their own, but through the creation and enforcement of policies established by their officers and employees. Nevertheless, the medical-professional liability exception to sovereign immunity specifically refers to "[a]cts of health care employees" and "a Commonwealth party who is a doctor, dentist, nurse or related health care professional." Accordingly, while [Section 8522(b)(2) of the Code] waives sovereign immunity for the negligent acts of specified individuals when they are working at or for a Commonwealth institution, it does not waive sovereign immunity for individuals who act as the corporate entity.
>
> While Commonwealth medical facilities are not immune from suit based on the negligence of their health care employees (respondeat superior), [Section 8522(b)(2) of the Code] does not provide for a waiver of immunity for the facilities themselves. Because of our responsibility to construe narrowly the legislatively created exceptions to sovereign immunity, [*Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989)], we cannot extend the corporate theory of liability to state owned medical facilities. Accordingly, plaintiffs who seek recovery from the Commonwealth for damages sustained in such facilities must base their cause of action on the negligence of the parties specifically enumerated in [Section 8522(b)(2) of the Code].

*Moser*, 681 A.2d at 1326.

7

### B. Corporate Negligence

The Beaverson Estate argues that the trial court committed an error of law by granting Appellees' Motion because public policy favors overturning the Supreme Court precedent established by *Moser* that corporate negligence claims against Commonwealth-owned medical facilities are barred by sovereign immunity. More specifically, the Beaverson Estate argues that, by not permitting claims of corporate negligence to proceed against Commonwealth-owned medical facilities, Section 8522 of the Code has created two different standards of care for Commonwealth-owned medical facilities and privately owned facilities—*i.e.*, "residents in facilities owned by the Commonwealth have less protection than those in privately owned facilities." (Beaverson Estate's Br. at 26-27.) The Beaverson Estate argues further that, if courts continue to dismiss claims of corporate negligence against Commonwealth-owned medical facilities, "attorneys for those individuals who suffered neglect at Commonwealth[-]owned [medical] facilities will have to begin listing individual caretakers as [parties] in these cases, including nurses and CNAs who may not have professional liability insurance." (Beaverson Estate's Br. at 27.) In response, Appellees argue that this Court is bound by the Supreme Court's decision in *Moser*, and, to the extent that the Beaverson Estate desires to overturn that decision, the Beaverson Estate should advance its public policy arguments to the General Assembly.

While we acknowledge the Beaverson Estate's public policy arguments relative to its claims of corporate negligence, we are constrained by precedent. As our Supreme Court stated in *Moser*, the medical-professional liability exception "waives sovereign immunity for the negligent acts of specified individuals when they are working at or for a Commonwealth institution, [but] it does not waive

8

sovereign immunity for individuals who act as the corporate entity." *Moser*, 681 A.2d at 1326. Thus, while Commonwealth medical facilities can be held liable for the negligence of their health care employees under a theory of respondeat superior, the waiver of immunity provided by the medical-professional liability exception does not extend to the Commonwealth-owned medical facility itself. *Id.* For these reasons, we cannot conclude that the trial court committed an error of law by granting Appellees' Motion with respect to the Beaverson Estate's claims of corporate negligence.

### C. Negligence of Individual Commonwealth Health Care Employees

The Beaverson Estate argues that the trial court committed an error of law by granting Appellees' Motion because, in addition to allegations of corporate negligence, its Complaint also sets forth allegations of negligent acts of individual Commonwealth health care employees and, therefore, Appellees' sovereign immunity is waived by the medical-professional liability exception. More specifically, the Beaverson Estate argues that,

> [w]hen the facts set forth in the Complaint are read in conjunction with the Complaint's allegations, it is clear that the failure to adequately supervise, and instead standing by and observing [Decedent] and Resident 4757 engage in a verbal altercation, and continuing to observe until the verbal altercation escalated to a physical altercation is very obviously an individual act by a [Center] employee (the CNA) and not simply a showing of institutional or administrative negligence.

(Beaverson Estate's Br. at 16.) The Beaverson Estate argues further that its Complaint also alleges negligent actions of other Center employees "in the formation and revision of [Decedent's] woefully inadequate [c]are [p]lans." (Beaverson Estate's Br. at 18.)

9

In response, Appellees argue that the medical-professional liability exception to sovereign immunity does not waive immunity with respect to intervening acts of third parties—*i.e.*, "[s]ince Resident 4757 is the individual who allegedly 'pushed' [Decedent] to the ground, [Decedent's] head injury was not 'caused by' the actions of Commonwealth 'health care employees' for statutory purposes." (Appellees' Br. at 15.) Appellees argue further that the CNA's alleged actions and omissions do not fall within the medical-professional liability exception because the CNA is not a Commonwealth health care employee or a doctor, dentist, nurse, or related health care personnel. Appellees also argue that the Beaverson Estate's claims do not fall under the medical-professional liability exception because the actions or inactions that the Beaverson Estate attempts to impute to health care employees—*i.e.*, failure to comply with certain state and federal regulations—relate to general duties and obligations of the Center. Lastly, Appellees argue that the trial court properly determined that the Supreme Court's holding in *Sherk v. County of Dauphin*, 614 A.2d 226 (Pa. 1992), is inapplicable to the facts of this case because those cases involved consideration of the medical-professional liability exception in conjunction with the immunity provision set forth in the Mental Health Procedures Act (MHPA).[4]

In its reply brief, the Beaverson Estate argues that Appellees are not insulated from liability simply because Resident 4757 and not a Commonwealth health care employee pushed Decedent. In support of its position, the Beaverson Estate contends that this case is similar to *Sherk* and factually distinguishable from *Alexander v. Department of Public Welfare*, 586 A.2d 475 (Pa. Cmwlth.), *appeal denied*, 593 A.2d 423 (Pa. 1991), the case that Appellees rely on in support of their

---

[4] Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. §§ 7101-7503.

position that the medical-professional liability exception does not waive immunity with respect to intervening acts of third parties. The Beaverson Estate further reiterates that the duties that the Beaverson Estate alleges were breached by Appellees relative to the Decedent's care plans are not just the Center's corporate duties but rather are duties owed by the Center's health care employees. The Beaverson Estate also argues that the CNA's actions and inactions fall within the medical-professional liability exception because, "[a]lthough a CNA is not a doctor or a nurse, a CNA certainly falls within the title of a healthcare professional." (Beaverson Estate's Reply Br. at 17.)

First, while we recognize that many of the allegations set forth in Paragraph 79 of the Beaverson Estate's Complaint blend allegations of both corporate negligence and the negligence of individual Commonwealth health care employees, the Beaverson Estate's Complaint, when read as a whole, sets forth allegations relative to the negligence of individual Commonwealth health care employees. For example, the Beaverson Estate alleges that Appellees, as well as their agents, servants, and/or employees, breached the duties they owed to Decedent:

> a. By failing to protect [Decedent] from physical harm, injury, and neglect, as pled herein;
>
> . . . .
>
> i. By failing to provide proper supervision of [Decedent], as pled herein;
>
> . . . .
>
> v. By failing to intervene, redirect or deescalate the situation which occurred on August 29, 2015 between [Decedent] and Resident 4757 when the residents began verbally arguing, as pled herein;
>
> w. By standing by and watching and as such, allowing [Decedent] to be engaged in an altercation with Resident 4757, which resulted in him being pushed

11

> to the floor and sustain a life-ending subdural hematoma, as pled herein[.]

(R.R. at 10-13; Compl. at ¶ 79.) These allegations clearly relate to the actions and/or inactions of the Center's CNA, an individual Commonwealth health care employee, and not just the actions and/or inactions of the Center itself. As such, these allegations, and potentially others set forth in Paragraph 79 of the Beaverson Estate's Complaint, if proven, could establish that Appellees are liable for medical negligence under the medical-professional liability exception to sovereign immunity.

With respect to the allegations set forth in Paragraph 82 of the Beaverson Estate's Complaint, relative to the state regulations created to implement the Health Care Facilities Act (HCFA)[5] and the federal regulations related to participation in Medicare and Medicaid, however, the result is different. Even though employees of the health care facilities may be responsible for carrying out the health care facilities' responsibilities set forth in the state regulations created under the HCFA, the General Assembly clearly intended for those regulations to govern the actions of the health care facilities themselves and not the health care facilities' employees. *See, e.g.*, Section 102 of the HCFA; 28 Pa. Code § 201.1. Likewise, the federal regulations setting forth the requirements that a state institution must meet to qualify to participate in Medicare and Medicaid were also intended to govern the actions of the state institutions themselves and not the state institutions' employees. *See, e.g.*, 42 C.F.R. § 483.1. Thus, the Beaverson Estate cannot use these regulations as a basis to establish a duty on behalf of an individual Commonwealth health care employee. As such, the allegations set forth in Paragraph 82 of the Beaverson Estate's Complaint constitute allegations of corporate

---

[5] Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101-.904b.

negligence, which are barred by sovereign immunity for the reasons set forth in Section III.B above.

Second, the cases cited by Appellees for the proposition that the medical-professional liability exception does not waive sovereign immunity for the intervening acts of third parties are distinguishable from the facts of this case.[6] In

---

[6] We also, however, reject the Beaverson Estate's argument that this case is similar to *Sherk*. In *Sherk*, a Lower Paxton Township police officer was dispatched to respond and investigate a suspicious person report, involving a white male with a gun. *Sherk*, 614 A.2d at 227. During his investigation, the police officer located and arrested Mark Jordan (Jordan). *Id.* While the police officer was attempting to subdue Jordan, however, Jordan obtained possession of the police officer's weapon and fired the weapon at the police officer, wounding him in his left thigh. *Id.* Jordan fled the scene and, shortly thereafter, committed suicide using the police officer's weapon. *Id.* The police officer and his wife filed a cause of action against, *inter alia*, the Harrisburg State Hospital (HSH), where Jordan had been a psychiatric patient prior to his release. *Id.* The police officer and his wife alleged that HSH "acted recklessly, wantonly and negligently in caring for and in prematurely releasing Jordan" from its care. *Id.* HSH filed preliminary objections, arguing that it was immune from suit and that the police officer and his wife had not pled any facts that would establish that an exception to sovereign immunity would apply or that HSH had waived its immunity in any other manner. *Id.* The trial court denied HSH's preliminary objections. *Id.* On interlocutory appeal to this Court, we reversed the trial court's decision and remanded the case to the trial court with instructions to sustain HSH's preliminary objections and dismiss the action. *Id.* The Pennsylvania Supreme Court granted allowance of appeal to consider whether HSH was shielded from liability by sovereign immunity. *Id.* at 227-28. Ultimately, the Supreme Court reaffirmed its decision in *Goryeb v. Department of Public Welfare*, 575 A.2d 545 (Pa. 1990), and held:

> [P]ursuant to the medical-professional liability exception to [sovereign immunity] read in *pari materia* with [Section 114 of the MHPA], sovereign immunity has been waived and a Commonwealth party may be liable for harm inflicted by a third party where the gross negligence or willful misconduct of the Commonwealth party in treating and releasing a psychiatric patient is a substantial factor in causing the harm.

*Id.* at 233. In other words, the Supreme Court based its decision on both the medical-professional liability exception and the provisions set forth in the MHPA that establish that Commonwealth parties who participate in a decision to examine, treat, or discharge a patient pursuant to the MHPA cannot be civilly or criminally liable for their actions unless such actions constituted willful

---

*Alexander*, an unknown individual abducted and raped a patient from the Altoona Center School and Hospital (ACSH), a state residential facility operated by the Pennsylvania Department of Public Welfare (DPW).[7] *Alexander*, 586 A.2d at 476. The patient and her parents filed a civil action against ACSH and DPW, and ACSH and DPW raised sovereign immunity as an affirmative defense. *Id.* Following a period of discovery, ACSH and DPW filed a motion for judgment on the pleadings, and the patient and her parents filed a motion for summary judgment. *Id.* The trial court entered judgment in favor of ACSH and DPW and dismissed the action. *Id.* The patient and her parents appealed the trial court's decision to this Court, arguing, *inter alia*, that "the negligence of the Commonwealth's health care employees in failing to protect the patient [fell] within the medical-professional liability exception to [sovereign immunity]." *Id.* This Court affirmed the trial court's decision, reasoning:

> [T]he medical-professional waiver of immunity does not turn upon the existence or non-existence of a legal duty. The medical-professional waiver is expressly limited to "[a]cts of health care employees." Therefore, because exceptions to the rule of immunity must be narrowly interpreted, we cannot expand the reading of the statute to include exceptions where causation stems from the intervening act of a third party.

*Id.* at 478 (internal citation omitted) (second alteration in original).

In *Casteel v. Tinkey*, 151 A.3d 261 (Pa. Cmwlth. 2016), *appeal denied*, 169 A.3d 1029 (Pa. 2017), Lonny Tinkey (Tinkey) was sentenced to serve three to

---

misconduct or gross negligence. *See id.* at 231-32. In this case, the MHPA is not at issue, and, therefore, the Supreme Court's decision in *Sherk* is not relevant to our decision.

[7] Since *Alexander* was decided, the General Assembly redesignated DPW as the Department of Human Services. *See* Section 103 of the Human Services Code, Act of June 13, 1967, P.L. 31, *as amended*, added by the Act of September 24, 2014, P.L. 2458, 62 P.S. § 103.

twenty-three months in the Somerset County jail in connection with a number of misdemeanors and summary offenses stemming from a serious motor vehicle accident. *Casteel*, 151 A.3d at 266. Upon recommendation, the sentencing court issued a work-release order that permitted Tinkey to continue his employment at Hidden Valley Ski Resort provided that Tinkey followed certain conditions, which included refraining from the use of drugs and alcohol. *Id.* In addition to the conditions of his work release, the trial judge also required Tinkey to obtain a drug and alcohol evaluation and successfully complete any and all recommendations for treatment and counseling. *Id.* While on work release, Tinkey consumed beer, borrowed another individual's truck, and, while driving under the influence, struck and killed Carly Miller (Miller) and Stacy Overton. *Id.*

Miller's Estate filed complaints against, *inter alia*, a number of Commonwealth defendants (Commonwealth Defendants), alleging that Tinkey was statutorily required to undergo treatment for alcohol abuse while incarcerated, that Tinkey was never evaluated, treated, or provided rehabilitation services for alcohol abuse in connection with his alcohol-related offenses while at the Somerset County jail, and that the Commonwealth Defendants' failure to provide the statutorily-required treatment constituted negligence *per se* and made them liable for damages. *Id.* at 266-67. The Commonwealth Defendants filed an answer, raising sovereign immunity as an affirmative defense. *Id.* at 267. Following a period of discovery, the Commonwealth Defendants filed a motion for summary judgment, which the trial court granted. *Id.* at 267-69. Miller's Estate appealed the trial court's decision to this Court. With respect to the issue of the applicability of the medical-professional liability exception to the acts of third parties, we held that "even if the failure to provide alcohol treatment fell within the medical-professional

15

exception and there was a duty to [Miller], the [Commonwealth Defendants have] not waived immunity for the acts of third parties—in this case, Tinkey's driving while intoxicated." *Id.* at 271.

In this case, unlike in *Alexander* and *Casteel*, Decedent, the injured party, as well as Resident 4757, the third-party perpetrator, were both under the Center's care and control at the time of the incident. *See Rabutino v. Freedom State Realty Co., Inc.*, 809 A.2d 933, 938 (Pa. Super. 2002) ("Generally, there is no duty to control the acts of a third party unless the 'defendant stands in some special relationship with either the person whose conduct needs to be controlled or . . . with the intended victim of the conduct, which gives the intended victim a right to protection.'" (quoting *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa. Super. 2000) (omission in original))).[8] Assuming the allegations set forth in the Beaverson Estate's Complaint are true, the CNA and other Center staff had a duty to intervene, redirect, and/or deescalate any altercations involving Decedent, Resident 4757, or any other Center residents to prevent Decedent, Resident 4757, or any other Center residents from suffering physical harm. If the Beaverson Estate proves that the CNA had this duty and breached it, the Beaverson Estate must be given an opportunity to establish that the "acts of a health care employee" were a contributing cause to Decedent's injuries. Appellees should not be able to use sovereign immunity to avoid liability for their actions and/or inactions under these circumstances simply because Resident 4757 and not a Center health care employee pushed Decedent causing him to fall and hit his head. The *Alexander* and *Casteel* cases are distinguishable from the facts of this case in this regard.

---

[8] Although not binding on this Court, Pennsylvania Superior Court decisions may be cited for their persuasive value. *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

16

Third, whether the CNA's actions or inactions fall within the medical-professional liability exception to sovereign immunity is a question of fact that cannot be decided based on the content of the pleadings. In other words, the pleadings do not provide sufficient facts to establish the CNA's duties and responsibilities and whether, based on those duties and responsibilities, the CNA would be considered a health care employee for the purposes of the medical-professional liability exception.

For all of these reasons, we must conclude that the trial court committed an error of law by granting Appellees' Motion with respect to the Beaverson Estate's claims relative to the negligence of individual Commonwealth health care employees.[9]

## IV. CONCLUSION

Accordingly, we affirm the trial court's order with respect to its dismissal of those portions of the Beaverson Estate's claims based on allegations of corporate negligence and reverse the trial court's order with respect to those portions of the Beaverson Estate's claims based on allegations of negligence of individual Commonwealth health care employees. The trial court is directed to review the duty/breach allegations set forth in Paragraph 79 of the Beaverson Estate's Complaint to determine, based on the rationale set forth in this decision, which of those allegations relate to allegations of corporate negligence and which of those

---

[9] We note, however, that our decision today is limited to the issue of sovereign immunity and the applicability of the medical-professional liability exception to the Beaverson Estate's allegations of negligence of individual Commonwealth health care employees. Our decision in no way addresses the Beaverson Estate's ability or inability to prove the elements of common law negligence or prevents the Commonwealth from presenting, at a later stage in these proceedings, any defenses premised on the conduct of Resident 4757.

17

allegations relate to allegations of negligence of individual Commonwealth health care employees.

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tina M. Byrne, Individually and as    :
Administratrix of the Estate of    :
Robert Eugene Beaverson, Deceased,    :
                 Appellant    :
   :
           v.    :   No. 561 C.D. 2018
   :
Commonwealth of Pennsylvania,    :
Department of Military and    :
Veterans Affairs, and    :
Hollidaysburg Veterans' Center    :

## O R D E R

AND NOW, this 19th day of March, 2019, the order of the Court of Common Pleas of Blair County is hereby AFFIRMED in part and REVERSED in part.

_____
P. KEVIN BROBSON, Judge